VAN IDERSTINE v. NATIONAL DISCOUNT CO.

(Circuit Court of Appeals, Second Circuit. December 7, 1909.)

No. 79.

1. APPEAL AND ERROR (§ 1000*)—REVIEW—GENERAL VERDICT—EQUITABLE AC-
TIONS.
   While federal District Courts may obtain general verdicts in equity causes from jurors for their guidance, such verdicts, without special findings of fact, are of little assistance to the court on appeal.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3925–3927; Dec. Dig. § 1000.*]

2. APPEAL AND ERROR (§ 990*)—EQUITY CAUSES—REVIEW OF EVIDENCE.
   On appeal from a decree in equity, the appellate court must weigh the evidence and determine whether, on such evidence, the decree is right.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3898; Dec. Dig. § 990.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 180*)—FRAUDULENT CONVEYANCE—ELEMENTS.

In order that a conveyance by a bankrupt shall be fraudulent within Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), providing that all conveyances made by the bankrupt within four months prior to the filing of the petition with intent to hinder, delay, or defraud his creditors, or any of them, shall be void except as to purchasers in good faith and for a fair consideration, the bankrupt must have an intent to hinder, delay, and defraud creditors, and there must have been a want of good faith on the part of the transferee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 252; Dec. Dig. § 180.*]

4. BANKRUPTCY (§ 180*)—FRAUDULENT CONVEYANCES—TRANSFER OF ACCOUNTS.

Where a bankrupt, with knowledge of insolvency, assigned certain accounts to secure advances from defendant, and at once used the money so obtained to pay favored creditors, the transaction, while constituting a preference, contained no element indicating an intent to defraud except inferentially by the making of a preferential payment, and was therefore not a fraudulent transfer prohibited by Bankr. Act July 1, 1898, c. 511, § 67e. 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 252; Dec. Dig. § 180.*]

5. BANKRUPTCY (§§ 159, 175*)—TRANSFERS—PREFERENTIAL AND FRAUDULENT TRANSFERS DISTINGUISHED.

A "preference" and a "fraudulent transfer" of a bankrupt's assets, within the bankrupt act, are not the same. In a preferential transfer, the fraud is technical, and consisting in the infraction of the rule of equal distribution among all creditors, which it is the policy of the court to enforce when all cannot be fully paid; while in a "fraudulent transfer" the fraud is actual, in that the bankrupt has secured an advantage for himself out of what, in law, should belong to his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. §§ 159, 175.*]

6. BANKRUPTCY (§ 182*)—FRAUDULENT CONVEYANCES—NOTICE TO GRANTEE.

Where a bankrupt, while insolvent, transferred certain merchandise accounts to defendant in order to raise money to pay favored creditors, the fact that the bankrupt desired to obtain advancements on his accounts, and that in order to do so he acceded to onerous and oppressive terms exacted by the lender, did not show that the lender had knowledge of the bankrupt's insolvency and that the transfer was a fraud on the bankrupt's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 255; Dec. Dig. § 182.*]

Appeal from the District Court of the United States for the Southern District of New York.

Action by Robert Van Iderstine, as trustee in bankruptcy of the firm of A. Fellerman & Son, against the National Discount Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded, with instructions.

Prior to August, 1905, the bankrupts, Fellerman & Son, were engaged in business as clothing manufacturers in New York City.

The defendant was a Maine corporation doing business in New York and engaged chiefly in advancing money to merchants upon their outstanding customers' accounts.

On August 15, 1909, the elder Fellerman applied to the defendant for advancements upon his firm's accounts, and a written agreement was entered in-

to wherein the defendant, as "banker," agreed to advance to Fellerman & Son, as "customer," 75 per cent. of the face value of such accounts as might be transferred to and accepted by it. The "customer" agreed to pay the "banker" 5 per cent. commission upon the gross amount of the accounts pledged, to reimburse it for such outlays as exchange and postage, and to pay 6 per cent. interest upon advances. The contract also contained other stipulations which are not of especial importance in the present case.

At the time of the execution of the contract, the defendant advanced to Fellerman $3,000 in cash upon accounts amounting to $5,232.39, and on August 18th made a further advancement upon accounts amounting to $2,495.60. Of the latter advancement Fellerman actually received $1,006.33; the amount of the commissions upon the accounts being treated as a part of this advancement.

Before making the advances the defendant looked up the financial standing of Fellerman & Son in the mercantile agency reports and found them rated as being worth from $50,000 to $75,000, with fair or good credit. With reference to that time, however, the reports were wholly inaccurate; Fellerman & Son being hopelessly insolvent.

Fellerman knew that his firm was insolvent at the time he pledged the accounts to the defendant. He used most of the money which he received in paying certain creditors whom he desired to prefer.

On August 19, 1905, a petition in involuntary bankruptcy was filed against Fellerman & Son, and they were subsequently declared bankrupts. After the bankruptcy proceedings, the defendant through an attorney collected upon the pledged accounts an amount in excess of the advancements upon them, and subsequently accounted to the trustee for the balance collected after deducting a small sum for interest and a large sum for attorney's fees.

The complainant, as trustee in bankruptcy of Fellerman & Son, brought a suit in equity in the District Court against the defendant to set aside as fraudulent the aforesaid transfers of accounts and to obtain an accounting. The District Court submitted the question of liability to a jury, which found that the complainant was entitled to recover $4,767.76; that being the amount with interest which it was claimed that the defendant had actually received. The District Court adopted the finding of the jury as its own and entered a decree for the amount stated, from which decree the defendant has appealed.

Gainsburg & Solomon (William J. Wallace, of counsel), for appellant.

James, Schell & Elkus ( Abram I. Elkus, Carlisle J. Gleason, and Robert P. Levis, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). Although this was a suit in equity, it was tried in the District Court substantially in the manner of a common-law action. The issues were submitted to a jury, which brought in a general verdict. No particular questions were submitted and no special findings made. The court accepted and adopted the verdict and entered a decree thereon.

We do not question the right of the District Court to obtain from jurors for its guidance general verdicts in equity causes. But we must point out that such verdicts are of little assistance to this court in ascertaining the facts in the case upon appeal. Without any special findings we cannot tell, except by inference, what facts were or were not found. We must examine and weigh all the evidence in the record and determine whether, upon such evidence, the decree was right.

To sustain the decree we must be satisfied that the transfers of accounts from Fellerman, to the defendant constituted fraudulent con-

veyances within the meaning of the bankruptcy act. Section 67e provides that:

"All conveyances, transfers, assignments or incumbrances of his property, or any part there made * * * a person adjudged a bankrupt * * * within four months prior to filing the petition with the intent and purpose on his part to hinder, delay or defraud his creditors or any of them shall be null and void as against the creditors of such debtor except as to purchasers in good faith and for a present fair consideration." Act July 1, 1898, c. 541, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

These elements then must necessarily appear in this case if the pledges of the accounts are to be held fraudulent:

(1) An intent upon the part of Fellerman & Son to hinder, delay, or defraud their creditors.

(2) Want of good faith upon the part of the defendant.

Now, while it is clear that Fellerman in pledging the accounts acted in view of insolvency, the evidence is not at all satisfactory that he intended to defraud his creditors, as distinguished from obtaining the means for preferring particular creditors. It seems quite clear that the first money obtained from the defendant was used to pay a note at the bank. It also seems that most, if not all, the other money was used to pay favored creditors.

So far as Fellerman was concerned, the payments made with the money obtained from the defendant were undoubtedly preferences. The money might have been recovered if the creditors had had reasonable cause to believe that preferences were intended. But there is no evidence that the payments were fraudulent. There is a marked distinction between a "preferential payment" and a "fraudulent conveyance." Every preferential payment must to some extent hinder and delay creditors, but it is not necessarily a fraudulent conveyance. As said by the Supreme Court of the United States, in the recent case of Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772:

"A consideration of the provisions of the bankruptcy law as to preferences and conveyances shows that there is a wide difference between the two, notwithstanding they are sometimes spoken of in such a way as to confuse the one with the other. A preference, if it have the effect prescribed in section 60, enabling one creditor to obtain a greater portion of the estate than others of the same class, is not necessarily fraudulent. Preferences are set aside when made within four months, with a view to obtaining an equal distribution of the estate, and in such cases it is only essential to show a transfer by an insolvent debtor to one who himself or by his agent knew of the intention to create a preference. In construing the bankruptcy act this distinction must be kept constantly in mind. As was said in Githens v. Shiffler [D. C.] 112 Fed. 505: 'An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one.' In Re Maher, 144 Fed. 503 509, it was well said by the District Court of Massachusetts: 'In a preferential transfer the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among all creditors, which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent transfer the fraud is actual, the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him.' "

A preferential payment may be constructively fraudulent, but it is not in and of itself a fraudulent conveyance. It can only become the latter in the unusual case where actual fraud in addition to the pref-

erences is established. Thus a secret trust in favor of a person making such payments might turn a mere preference into a fraudulent conveyance. But there is no proof in this case of any intent to hinder or defraud creditors more than the preferential payments in themselves would have hindered them. The language of Judge Sanborn in Sargent v. Blake, 160 Fed. 57, 61, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, is especially in point:

"The only way in which Maxwell could have made this payment in bad faith would have been to have made it in whole or in part in secret trust for himself, or with the actual intent to hinder or defraud the creditors of the company more than the mere payment of the debt * * * must necessarily have delayed or prevented their collection of their claims, and there was no evidence of any such trust or intent."

See, also, Coder v. Arts, supra.

If then there was no actual fraud upon the part of Fellerman in using the money obtained from the defendant in making preferential payments, it necessarily follows that there was no actual fraud in pledging the accounts to the defendant to obtain the money for such use. If a preference itself is not fraudulent as to creditors, there can be no fraudulent intent in obtaining the money to make a preference.

The decision in Ex parte Stubbins, L. R. 17, Ch. Div. 58, 68, with respect to the English bankruptcy act is applicable:

"But it is pressed upon us * * * that the transfer of goods to a purchaser for value with the view of using the purchase money for a voluntary preference, the purchaser knowing this intention, was a fraudulent conveying away or transfer within the meaning of the sixth section of the act. It appears to me that that view cannot be sustained. In truth a mere voluntary transfer impeachable only on the ground that it is a preference to a particular creditor has never been held to be, in itself, a fraud or an act of bankruptcy. It may be impeached on the ground that it is voluntary, but it is impossible, as it appears to me, to hold that a mere voluntary transfer is of itself an act of fraud, and if this is not fraudulent within any principle of law it would be equally impossible to say that a sale becomes fraudulent because there is an intention in the mind of the vendor to use the purchase money for the purpose of making a voluntary preference, and the purchaser knows that that is the motive of the sale and the intention of the vendor with reference to the proceeds of the sale."

Assuming, however, that a fraudulent intent on Fellerman's part appears, the other element of the complainant's case is lacking. There is no tangible evidence to negative good faith on the part of the defendant. The complainant alleged, but failed to establish, that the defendant had full knowledge of Fellerman's fraudulent intention "and was not a purchaser in good faith of said accounts, nor did it pay a present fair consideration, but took said transfers with the intention to aid the consummation of said fraudulent scheme."

On the contrary, the defendant in making the loans did pay a present fair consideration, and there is no affirmative evidence that it took the transfers of accounts with the purpose of assisting Fellerman in an attempt to defraud his creditors. Substantially the only direct evidence showing any want of good faith upon the part of the defendant is the testimony that Levison suggested that Fellerman use the equity in the accounts to buy stock in the defendant corporation which could readily be turned over to members of his family. But the testimony

concerning this statement is not wholly satisfactory. Moreover, if Levison made it as Fellerman testifies, it must have been made, according to the same testimony, in ignorance of the condition of Fellerman's affairs. Fellerman, when called by the complainant, testified that he did not disclose his financial situation to the defendant.

Practically all the complainant can urge is that the defendant was put upon inquiry by these circumstances:

(1) That Fellerman desired to obtain advancements upon his accounts.

(2) That, in order to obtain them, he acceded to onerous and oppressive terms.

We cannot say, however, that a desire to borrow money upon accounts is indicative of an intent to defraud creditors. From the defendant's point of view at that time it would seem that Fellerman's desire to secure advancements was quite as consistent with an intention to pay creditors, or, at least, to pay favored creditors, as it was to defraud creditors. And the fact that Fellerman was ready to agree to harsh and oppressive terms to obtain the money indicates Fellerman's need, but hardly his fraudulent intent.

If, in view of the allegations of the complaint, the burden were upon the complainant, to establish his allegation that the defendant was not a purchaser in good faith, we think that he wholly failed to do so. And even if the burden were upon the defendant to show its good faith, we are of the opinion that it sustained the burden.

The defendant undoubtedly took advantage of Fellerman's apparent necessities. But there was nothing in these necessities necessarily indicative of an intention to defraud—certainly nothing showing an intent to make a "fraudulent conveyance" as distinguished from a "preference."

The decision of the District Court is reversed, with costs, and the cause remanded, with instructions to dismiss the bill, with costs.