### In re RIVKIN et al.

#### (District Court, D. Connecticut. August 5, 1914.)

#### No. 3330.

1. BANKRUPTCY (§ 381*)—COMPOSITION—OBJECTIONS—SPECIFICATION—BURDEN OF PROOF.

  The burden of sustaining specifications of objection to the confirmation of an offer of composition rests on the objecting creditors.

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

2. BANKRUPTCY (§ 381*)—COMPOSITION—CONFIRMATION—OBJECTIONS—CONCEALMENT OR DESTRUCTION OF BOOKS.

  Evidence that books of account of the bankrupts' prior manufacturing business which they terminated in October, 1912, were lost, destroyed, or concealed was insufficient to sustain a specification of objection to an offer of composition that the bankrupts had concealed or destroyed the books of such business "with intent to conceal their true financial condition."

  [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

3. EVIDENCE (§ 584*)—WEIGHT AND CONCLUSIVENESS—QUESTIONS OF FACT.

  No trier of a question of fact is permitted to guess with the hope that his determination is correct, but facts must be found on evidence to support them, and suspicions, however strong, cannot be substituted therefor

  [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2424, 2426, 2427; Dec. Dig. § 584.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** Bankruptcy (§ 384*)—Composition—Confirmation—Objections—Preferential Payments.

Preferential payments by the bankrupts to bona fide creditors, are not ground for refusing confirmation of a composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 590–592; Dec. Dig. § 384.*]

**5.** Bankruptcy (§ 382*)—Composition—Confirmation—Perjury.

A finding by a special master that he was unable to report that he was satisfied that the bankrupt had not been guilty of knowingly and fraudulently making false oath in the bankruptcy proceedings, was insufficient to sustain objections to an offer of composition on the theory that the bankrupt had committed perjury when testifying concerning the loss of books of a prior manufacturing business in which they had engaged, since to sustain such objection it was essential that the master find that perjury had been in fact committed, and that the specification charging perjury should set out the testimony given, claimed to be false, together with the facts relied on to show its falsity, so as to present a specific issue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 592; Dec. Dig. § 382.*]

**6.** Bankruptcy (§ 381*)—Composition—Objections—Perjury—Waiver.

Where an objection to a composition offered by the bankrupt insufficiently charged perjury committed by the bankrupts in the proceedings, the fact that the bankrupts waived the legal insufficiency of the specification by not taking a timely objection thereto did not cure a failure of the objecting creditors to prove the specification by legally sufficient evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

**7.** Bankruptcy (§ 381*)—Composition—Confirmation—Objections.

Creditors, irrespective of the number or amount of their claims, may successfully oppose a confirmation of a composition, when they, under sufficient specifications, present adequate proof to establish a violation of one or more of the provisions of the bankruptcy act, which is made a sufficient reason to deny confirmation of a proposed composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. § 381.*]

In Bankruptcy. In the matter of Maurice S. Rivkin and another, copartners as Rivkin Bros., bankrupts. On exceptions to a report of a special master denying the bankrupts' petition for confirmation of a composition. Exceptions sustained, report disapproved, and offer of composition confirmed.

Alvan Waldo Hyde, of Hartford, Conn., for Union Oil Co., creditor.

Henry H. Hunt, of Hartford, Conn., for C. W. Baker & Sons, creditor.

Benjamin Slade, of New Haven, Conn., for bankrupts.

THOMAS, District Judge. In this proceeding the bankrupts, by exceptions, challenge the legal sufficiency and force of an unfavorable report made by George A. Kellogg, Esq., as special master, to whom was referred bankrupts' petition for confirmation of a composition in bankruptcy. The record shows that the bankrupts' total obligations are approximately $58,000, which aggregate amount is represented by a large number of creditors. Two only have filed specifications in opposition to a confirmation of the composition. The amount of these two

claims is $2,470.80, leaving over $55,500 of claims allowed, of which a very large majority in number and amount voted in favor of the composition offer, and the rest of the creditors made no opposition. The objecting creditors filed eight (8) specifications in opposition to the composition offer. The learned master struck out specifications 1, 3, 6, and 8 as insufficient, and received evidence pertaining to specifications 2, 4, 5, and 7.

Specification No. 2 alleged that the offer of composition was not for the best interest of creditors. As to this claim the master found as follows:

"Although much evidence was presented to me by the objecting creditors upon this issue in view of which it seems probable to me that the trustee may realize in the usual course of administration of this estate upwards of $20,000, nevertheless they have not sustained the burden of proof by evidence so clear and convincing that I feel justified in overruling the business judgment of the great majority of creditors. I, therefore, decline to find that the confirmation of composition is not for the best interest of creditors."

This leaves for the court's consideration the allegations contained in the fourth, fifth, and seventh specifications, which are as follows:

"(4) Because said bankrupts, with intent to conceal their true financial condition and in contemplation of bankruptcy, concealed or destroyed certain books of account and records from which such financial condition could be ascertained, to wit, all books, papers, memoranda and records whatsoever pertaining to their business as conducted prior to October 1, 1912.

"(5) Because said bankrupts, at a time subsequent to the first day of the four months immediately preceding the filing of their petition in bankruptcy, transferred, removed, destroyed, and concealed or permitted to be removed, destroyed, and concealed, certain of their property, as per Schedule B, attached hereto, with intent to hinder, delay, and defraud their creditors."

Schedule B contains a list of claims "paid within four months prior to filing petition upon existing indebtedness" and amounting to $24,-128.86 and for "goods claimed to have been sold for less than the market price, within four months prior to filing petition," amounting to $11,527.27.

"(7) Because the said Maurice S. Rivkin, during his examination before the referee in bankruptcy and before the United States District Court in his examination relative to the books and records mentioned and designated in paragraph 4, committed perjury in that he stated under oath that he had destroyed said books, and denied and disclaimed any knowledge of the existence or whereabouts of said books at any time subsequent to October 1, 1912, and whereas in truth and in fact the said Maurice S. Rivkin knew of said books and records, the persons concealing the same and all facts relating thereto."

Before taking up the legal questions involved the following facts taken from the master's report are of importance. He finds from the evidence before him as follows:

"The brothers, Maurice S. Rivkin and Nathan F. Rivkin, have been doing business as partners in the city of Hartford for many years. Prior to July, 1911, they were for some time engaged in the grocery business. About that date they began the manufacture of ladies' dry goods in a building on Market street in said city of Hartford, and gradually closed out the grocery line. The manufacturing enterprise was unsuccessful, and after heavy losses they closed it out in September, 1912, and about October 1, 1912, began a wholesale grocery business, comprising both American and foreign goods, in the building owned by them and known as Nos. 219-221 State street in said Hart-

ford. From October, 1912, this business steadily increased in volume for more than a year, amounting in gross sales to over $100,000. They had, however, contracted large indebtedness which they could not meet, and on January 7, 1914, creditors attached their property and closed their store. Five days later the Italian Importing Company of New York and other creditors filed an involuntary petition against Rivkin Bros., and shortly thereafter W. K. Butler was appointed temporary receiver of their estate. On January 26th order of adjudication was entered, and January 27th the case was referred to me as referee for administration in the usual course. On the same day attorneys for bankrupts filed bankrupt's schedules, purporting to show complete lists of their assets and liabilities, which schedules showed unincumbered assets amounting on their face to about $18,000, and unsecured debts aggregating about $58,000."

Briefly, the master assigns three reasons in his report why he refused to act favorably on the bankrupts' offer of composition, viz.: (1) That bankrupts have concealed or destroyed or failed to keep books of their former manufacturing business, conducted prior to October, 1912, with intent to conceal their true financial condition. (2) That bankrupts made preferential payments to certain of their creditors. (3) That:

"I am therefore unable to report that I am satisfied that bankrupt has not been guilty of knowingly and fraudulently making false oath in the proceedings in this court."

[1] These three grounds will be discussed in their order. The burden of sustaining these specifications rested on the objecting creditors. As to the first claim the special master finds that the bankrupts either destroyed or concealed or failed to keep, books of their former manufacturing business, and that they did this with the intent of concealing their financial condition. I have very carefully examined the evidence taken by the referee and special master, and I fail to find that any proof exists justifying this finding. The creditors have not offered any evidence to substantiate this claim, except the testimony of one of the bankrupts, and that testimony does not, in my opinion, warrant the finding. In arriving at this conclusion I have applied the rule that the special master was privileged to draw all legitimate inferences from established facts, but the evidence fails to disclose the proved existence of facts from which a trier, by inference, could conclude that the bankrupts either failed to keep, or destroyed or concealed, the books of their former manufacturing business *with intent* to *conceal their true financial condition,* as alleged in the specifications.

[2] From the testimony of Maurice Rivkin the most that a trier could find was that the books were lost or destroyed or concealed, but from no part of the testimony, or from an examination of the whole record, am I able to find, as a fact, by testimony or by fair inference, that this was done with intent to conceal the true financial condition of Rivkin Bros. It must be remembered that whatever happened to the books, either by acts of omission or commission, occurred prior to October, 1912. Bankruptcy proceedings did not begin until early in January, 1914. Only by the merest guess can a trier find that such act was then done with intent to conceal their true financial condition.

My conclusion in this respect finds further support in the special master's uncertain finding that:

"They have destroyed or concealed, or failed to keep, books of their manufacturing business."

If from all the evidence such facts are found even in the alternative, there is nothing in the whole record from which a trier could reasonably or fairly draw the inference that such destruction or concealment of, or failure to keep, books was done with the intent to conceal the true financial condition of the bankrupts. Further, better and more satisfactory evidence, it seems to me, would be very necessary to fairly establish the fact that whatever was or was not done with reference to the books prior to October, 1912, was done to conceal the true financial conditions of these bankrupts in January, 1914.

[3] No trier of a question of fact is permitted to venture a guess with the hope that it is correct. Facts can only be found upon evidence, and suspicions, however strong, cannot be substituted therefor. This is the universal rule, and the only safe rule under which justice can fairly be administered. Hence I find that the objecting creditors have not sustained the burden of proof with reference to this specification, and that the offer of compromise should not be rejected on this ground.

[4] While it may be true that the special master's finding with reference to preferential payments shows a violation of the spirit of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), yet Congress did not provide that such preferential payments shall constitute sufficient ground to reject a composition offer. I am firmly of the opinion that the learned master misapprehended the doctrine laid down in Van Iderstine v. National Discount Co., 174 Fed. 518, 98 C. C. A. 300, which he cites as his authority to sustain his conclusions that a preferential payment constitutes a sufficient ground in opposition, or that such preferential payment is a fraudulent conveyance to hinder, delay, or defraud creditors within the meaning of the Bankruptcy Act as a ground in opposition to confirm an offer of composition. Quoting more fully than the special master did from the opinion of Judge Noyes in the case above referred to, and from a careful reading of all of that part of the case pertinent to the present inquiry, one is thereby enabled to comprehend the full scope of that decision, and to more accurately apply the principle of law therein laid down. The court said, 174 Fed., page 521, 98 C. C. A., page 303:

"So far as Fellerman was concerned, the payments made with the money obtained from the defendant were undoubtedly preferences. The money might have been recovered if the creditors had had reasonable cause to believe that preferences were intended. But there is no evidence that the payments were fraudulent. *There is a marked distinction between a 'preferential payment' and a 'fraudulent conveyance.' Every preferential payment must, to some extent, hinder and delay creditors, but it is not necessarily a fraudulent conveyance.*"

There is a distinction between a "preferential payment" and a "fraudulent conveyance" for the Circuit Court in the same case, on page 523 of 174 Fed., on page 305 of 98 C. C. A., said:

"The defendant undoubtedly took advantage of Fellerman's apparent necessities. But there was nothing in these necessities necessarily indicative of an

intention to defraud—certainly nothing showing an intent to make a 'fraudulent conveyance' as distinguished from a 'preference.'"

See, also, Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008.

From Schedule B, above quoted, and as contained in the objecting creditors' specifications, it is admitted by counsel for the objecting creditors that these payments were made upon "existing indebtedness." This, I believe, negatives the claim that such a transfer was a "fraudulent conveyance," made with intent to hinder and delay creditors within the doctrine of Van Iderstine v. National Discount Co., 174 Fed. 518, 98 C. C. A. 300, so that I am forced to the conclusion that the special master's finding in this respect should not be approved, and that the bankrupts' offer of composition should not be denied on this ground. See, also, In re Brumbaugh (D. C.) 128 Fed. 971; In re Maher et al. (D. C.) 144 Fed. 503, also cited by the Supreme Court in Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, supra.

[5] Under the last reason assigned for rejecting the offer of composition and set out at length in specification (7) supra, the special master reports as follows:

"I am therefore unable to report that I am satisfied that bankrupt has not been guilty of knowingly and fraudulently making false oath in the proceedings in this court."

In other words, the master finds the allegations contained in the seventh specification established, and refuses to approve the offer of compromise on the ground that one of the bankrupts, Maurice Rivkin, committed perjury when testifying concerning the books of the manufacturing concern which suspended business about September, 1912.

The special master probably intended to find that one of the bankrupts testified falsely before him, but the record and evidence does not warrant the court in sustaining his finding. Perjury is an offense punishable by imprisonment, and when it is relied upon, as here, it should be charged with substantially the same particularity and exactness as would be required in an indictment. In re Hirsch (D. C.) 96 Fed. 468.

The specification charging perjury does not set forth the testimony given which is alleged to be false, together with the facts relied on to prove its falsity so as to present a specific issue, and under the law such allegations are necessary. In re Goodale et al. (D. C.) 109 Fed. 783.

The specification charging perjury should have alleged that the testimony of Maurice Rivkin was given, willfully, knowingly, and fraudulently, and with reference to a material question, in order that the person so testifying might have the benefit which the law gives him of compelling the objecting creditors to prove the essential legal elements necessary to constitute perjury. This was not done. Hence the specification is insufficient. In re Eaton (D. C.) 110 Fed. 731; In re Beebe (D. C.) 116 Fed. 48; In re Cohen et al. (D. C.) 149 Fed. 908.

[6] The special master, therefore, should have held the specification charging perjury upon the part of one of the bankrupts, Maurice S. Rivkin, as insufficient. No explanation or reason is given by the special master in his report why he properly passed upon the legal in-

sufficiency of specifications 1, 3, 6, and 8 and failed to pass upon the legal insufficiency of the one charging perjury; hence I conclude that it was because of his belief that the allegations were sufficient, but under the federal decisions, numerous and consistent, I am bound to overrule the special master and hold that the charge as set out in specification (7) is legally insufficient. The learned attorneys for the objecting creditors contend that the bankrupts waived the legal insufficiency of this specification by not making a timely objection. In this contention I cannot agree, for even so, it does not cure the evil disclosed that there was no legal proof warranting inferentially or directly the finding that perjury was committed. It is said in Re Hendrick (D. C.) 138 Fed. 473, 14 Am. Bankr. Rep. 796:

"The specifications of objections required proof, and, until a sufficient quantity of proof had been presented to the master, no valid objection to a discharge existed, and no testimony should have been heard, except such as had for a foundation a valid specification of objection. The creditors were acting at their own risk when they filed their objections. If they were not sufficiently specific, the master's only duty was to report back to me that nothing had been filed with him in the way of objections which he thought required him to take testimony."

The master's report does not disclose that his mind was satisfied by a sufficient degree of proof that perjury was committed. The report says:

"I am therefore unable to report that I am satisfied that bankrupt has not been guilty of knowingly and fraudulently making false oath in the proceedings in this court."

This is far from the requirements that the law exacts that the finding should show that the trier was reasonably certain that perjury was committed. Giving the quoted language employed by the special master its normal significance, he inferentially says that, "I suspect that the bankrupt did not testify truthfully." Again, I deem it proper to say that the law does not permit us to indulge in guesswork, or to find facts on suspicion. To charge a person with perjury, be he bankrupt or any other person, is charging a serious offense and should be charged in proper form, whether in an indictment or in specifications of objections, in order that the person so charged may have the full benefit of the law's protection. I am unwilling to sustain the master's finding in this respect, as I cannot find that the rules of law will permit me to do so.

Counsel for the objecting creditors argue that bankrupts' exceptions to the master's report are too general, and for that reason claim that the court should ignore them and sustain the master's report. The exceptions, when read in their entirety, point out the claimed errors committed by the master, and I have given them proper effect, and therefore must and do find them sufficient.

[7] The court is mindful of the rights of objecting creditors, irrespective of the number or amount of their claims, to successfully oppose a confirmation of a composition when such objecting creditors, under specifications sufficient in law, present adequate proof and meet the requirements of the rules of law and of evidence, and thus estab-

lish a violation of some one or more of the provisions of the Bankruptcy Act which is made a reason sufficient to deny a confirmation of any proposed composition.

From the admitted facts it appears that it is for the best interests of the creditors that the offer of composition of 22 per cent. be confirmed. I am not satisfied from the evidence that the objecting creditors have properly met the rules of law and of evidence and established the fact that the bankrupts have been guilty of any of the acts, or failed to perform any of the duties which would bar them from a discharge. I also find that the offer and acceptance are made in good faith and have not been procured by any means, promise, or acts prohibited by the Bankruptcy Act.

The special master's report is therefore disapproved and his finding is set aside.

Let an order be entered confirming the offer of composition of 22 per cent. and directing the custodian of the fund to distribute the same under the supervision of the referee according to law.