## In re ANTON.

(District Court, N. D. Iowa, E. D. July 30, 1922.)

### No. 1134.

Bankruptcy ⬦⟹407(3)—Preference is not fraudulent transfer, which will bar discharge; "hindering, delaying, or defrauding."

In order that a debtor's act may result in hindering, delaying, or defrauding a creditor, within the meaning of Bankruptcy Act, § 14b, subd. 4 (Comp. St. § 9598b, subd. 4), and constitute a bar to his discharge, it must be a transfer or other disposition of property which would be fraudulent at common law, and a mere preference of one creditor over another is not sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Hinder, Delay, and Defraud.]

In Bankruptcy. In the matter of Clyde C. Anton, bankrupt. On petition of bankrupt for discharge. Granted.

Reed, Tuthill & Reed and J. T. Sullivan, all of Waterloo, Iowa, for bankrupt.

Mears & Lovejoy, of Waterloo, Iowa, and W. M. Blough, of Laporte City, Iowa, for objecting creditors.

SCOTT, District Judge. The above-entitled matter came on for hearing at Waterloo, Iowa, on the 9th day of May, 1922, upon the petition of the bankrupt for discharge and the objection of creditors thereto, and upon the report of Special Master J. E. Jordan. The bankrupt, Clyde C. Anton, appeared by his attorneys, Reed, Tuthill & Reed and J. T. Sullivan, and the objecting creditors by their attorneys, Mears & Lovejoy and W. M. Blough. And thereupon the matter was fully argued and briefs on the respective sides furnished, and the matter was submitted and taken under advisement. Now, on this 31st day of July, 1922, said matter comes on for final consideration and determination.

The objecting creditors, Farmers' Savings Bank, Union State Bank, and Richards & Richards, all of Laporte City, Iowa, filed specifications of grounds of opposition to the discharge of the bankrupt. Four general objections to the bankrupt's discharge are filed:

(1) That the bankrupt has committed an offense punishable by imprisonment as provided in section 29 of the Bankruptcy Law (Comp. St. § 9613).

(2) That within four months prior to the filing of the petition the bankrupt transferred, removed, destroyed, or concealed, or permitted

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be destroyed, removed, or concealed, property with intent to hinder, delay, and defraud his creditors.

(3) That the bankrupt, while under examination and at other times in connection with the bankruptcy proceedings, made false oaths.

(4) That the bankrupt, with intent to conceal his financial condition, has destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained.

Under these general objections numerous particular instances are specified. The special master has reported findings of fact and recommendations dealing with each particular specification. In each particular instance, with the exception of one under objection 2, the special master finds against the objecting creditors and in favor of the petitioner. The court has examined the record in these respects and the report of the special master, and is of the opinion that the findings and conclusions of the special master are sustained by the evidence and should be affirmed, with the exception of the finding and recommendation of the special master upon objection 2.

Under objection 2 the objecting creditors oppose the discharge for the reason:

"That within a period of four months prior to the filing of the petition in bankruptcy the bankrupt transferred, removed, destroyed, or concealed, or permitted to be destroyed, removed, or concealed property with intent to hinder, delay or defraud his creditors"

—and then specifying particularly:

"(1) That on the day that the bankrupt prepared his petition in said cause, to wit, on January 31, 1921, with intent to hinder, delay, and defraud his creditors the said bankrupt did transfer to W. W. Smith, of Laporte City, Iowa, a sum approximating $20; to Layman & Clock, of Laporte City, Iowa, $18, approximately; to St. Clair & Franklin of Laporte City, Iowa, a sum approximating $33; and to D. M. Kline, of Laporte City, Iowa, a sum approximating $120.

"(2) That with intent to hinder, delay, and defraud his creditors the said bankrupt did, on or about the middle of January, 1921, sell and transfer to one Lloyd Lamb, of Laporte City, Iowa, a bunch of hogs receiving therefor approximately the sum of $370, which sale was made by said bankrupt for the purpose of placing said hogs and the proceeds thereof beyond the reach of his creditors, and the said sale from his said creditors with the purpose of hindering, delaying, and defrauding them."

Specifications 1 and 2 under objection 2, above quoted, are treated in the special master's report together. The facts and circumstances so separately specified are very closely related. The same intent is charged with respect to the continuous chain of acts and events. The record without controversy shows that the bankrupt, within four months of filing his petition, sold a considerable number of hogs and received in payment therefor a check for approximately $370; that he was insolvent at the time, and that among other indebtedness owed a considerable sum to the Farmers' Savings Bank of Laporte City, Iowa, of which one Kober was president; that Kober had been trying to get the claim of the bank secured, and that bankrupt suspected that Kober, if he knew of the bankrupt's possession of the funds in question, would be insisting upon the payment of the same on the bank's indebtedness; that bankrupt, on receipt of the check, sent the same to his father, who re-

sided nearby, to cash and hold for the bankrupt's account; that he later drew $20 of the same from his father for his personal use; that, when in consultation with his attorney, preparatory to the drawing of his voluntary petition and schedules, he advised his attorney of his possession of the funds in question, and of his desire to pay a number of small bills in full before filing his petition, and asked his attorney's advice whether it could be legally done, and that his attorney advised him that it could; that bankrupt thereupon paid one bill of $20, one bill of $18, one bill of $33, and one bill of $120, and that he thereafter paid his attorney out of said money $136.75, to cover attorney's fees and advanced costs in the bankruptcy proceeding.

The objecting creditors specify the original act of selling the hogs and delivering the check to his father as being a transfer of his property with intent to hinder, delay, and defraud his creditors. The objecting creditors also specify the act of paying the small bills out of the proceeds of the hogs immediately before the preparation of the petition in bankruptcy. The question to be determined in connection with these specifications is: Does the record fairly show an intent upon the part of the bankrupt, in connection with these series of acts, to hinder, delay, or defraud his creditors, within the meaning of section 14b, subd. 4, of the Bankruptcy Law (Comp. St. § 9598b, subd. 4).

The special master has reported, finding that the delivery of the check for the proceeds of the hogs to his father by the bankrupt was with intent to hinder, delay, and defraud his creditors, and that upon that ground the bankrupt's discharge should be denied. The basis of this finding is that the bankrupt testified, when under examination at the creditors' meeting, that he had sent the check to his father, telling his father to keep it, because he did not want Mr. Kober to have it. As before stated, Kober was president of the Farmers' Savings Bank of Laporte City, a creditor of the bankrupt. In the opinion of the court, bankrupt's act in sending the check received on the sale of the hogs to his father, even though with the idea and purpose of preventing Mr. Kober from getting the particular check or money, was not a transfer of any part of his estate with intent to hinder, delay, or defraud his creditors.

It is quite apparent that there was no intent or purpose on the bankrupt's part to transfer the ownership of the check at all, but merely used his father for a depositary of the funds. The Farmers' Savings Bank had no claim upon this money, and, had the bankrupt paid it over to this bank on its indebtedness, he would have done nothing more or different than he did in paying out the same money on the other bills. He would have merely preferred the Farmers' Savings Bank of Laporte City. In order that a debtor's act may result in hindering, delaying, or defrauding a creditor, within the meaning of section 14b, subd. 4, the transfer or other enumerated act must be calculated to deprive the creditor of some lawful right. In other words, it must be a transfer or other disposition which would be fraudulent at common law. In re Maher (D. C. Mass.) 144 Fed. 503; Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; In re Battle (D. C. N. C.) 154 Fed. 741; In re Rivkin (D. C. Conn.) 216 Fed. 218.

A mere preference of one creditor over another is not sufficient to fall within the prohibiton of this subdivision, and consequently an intent to so prefer is not sufficient. The act and purpose must go farther than merely delivering the funds of the bankrupt into the pocket of one creditor in preference to another, and yet it seems to the court that, under the undisputed record here, that was all that was accomplished or intended by the bankrupt in this case. The case is clearly distinguishable from Grafton v. Meikleham, 246 Fed. 737, 159 C. C. A. 39, which was apparently relied upon by the Special Master in arriving at his conclusion. In the Meikleham Case it was contended by the objecting creditor:

"(1) That there was no bona fide transfer of the salary to the attorney, either to satisfy the fee in bankruptcy or fees for previous services, but that it was a fictitious arrangement, not intended to be carried out, to excuse the bankrupt from listing the salary as an asset, and hence a concealment of his assets from his trustee in bankruptcy; or (2) that, if there was a verbal transfer of the debt owing him for salary to his attorney, it was not made for the purpose of preferring his attorney, but for the expressed purpose of hindering, delaying, and defrauding his principal creditor, and was also infected with a secret trust in his own favor, by which he was to be permitted to collect and spend the money when it was due as he saw fit."

The court, commenting on this language, said:

"We think that the declarations of the parties, the circumstances of the transaction, and the subsequent conduct of the bankrupt and his attorney with reference to the disposition of the salary bear out the contention of the objecting creditor."

. It must be in the light of this finding by the court that we apply the decision in the Meikleham Case. Clearly, under the finding just quoted, the transaction was a transfer for the purpose of hindering, delaying, or defrauding a creditor. The bankrupt was planning a personal advantage at the expense of the estate and his creditors. In the case at bar there is no foundation for a claim that the bankrupt intended any personal advantage by any of these acts. It is true he preferred to pay these small bills before filing his petition in bankruptcy. This, under the common law, was entirely legal. It is true that the bankrupt desired and intended to use the particular proceeds of the hogs for the payment of the small bills in question, and the payment of fees and advances in connection with the bankruptcy proceeding. This he had the right to do, subject only to the right of the trustee to recover any preference, upon proving the necessary facts. It is not withholding money from a particular creditor, however intentional, that constitutes a legal fraud on such creditor.

Upon the undisputed facts shown by the record, the court is of opinion that the finding and recommendation of the special master touching the first and second specifications under objection 2 ought not to be approved. The court is further of opinion that the findings and recommendations upon the other specifications and objections of the objecting creditors ought to be approved.

It is therefore ordered that the findings of the special master upon specifications 1 and 2 under objection 2 be and the same are hereby disapproved, and the court finds that the discharge should not be withheld

upon either of these specifications. It is further ordered that the report and recommendation of the special master upon the other objections and specifications ought to be and are hereby approved, and that the discharge of the bankrupt be and same is hereby granted.