## In re LOW.
### No. 22418.

District Court, E. D. New York.
Oct. 13, 1933.

Archibald Palmer, of New York City (Samuel Masia, of New York City, of counsel), for bankrupt.

Gettinger & Gettinger, of New York City, for objecting creditor, Industrial National Bank.

GALSTON, District Judge.

Both the bankrupt and the objecting creditor move in respect to the referee's report. The bankrupt seeks to reverse because specification No. 1 was sustained by the referee; the opposing creditor seeks to have that part of the report confirmed, but reversed as to specification No. 2.

The first specification charges that the bankrupt failed to keep books and records of his financial transactions from which creditors could ascertain his financial condition; the second, that the bankrupt made an assignment to his wife of insurance commissions within four months preceding his bankruptcy, with intent to hinder, delay, and defraud his creditors.

The bankrupt was an insurance broker engaged in soliciting insurance of all kinds, but particularly life, fire, automobile, and boiler insurance. Up to the time of the suspension of business of the Bank of the United States, he had maintained a bank account in that institution. He did not have canceled checks nor check stubs that had been used for the period immediately preceding the closing of the bank. He had no record to show what his income was for the year 1930 nor for 1931.

The only book of account that he was able to produce was one relating to insurance other than life insurance, covering items from April, 1932, to the time that the petition in bankruptcy was filed in May, 1932. Although this type of book had been maintained for a year and a half prior thereto, none of the earlier books was produced. He had no books at all from which his financial condition could be ascertained for the years 1930, 1931, and 1932. Nor did he produce a copy of his income tax return for 1932.

It abundantly appears from the testimony of the witness Sloane, an insurance broker, that one engaged in general insurance brokerage should maintain books and records for the reason, among others, that renewals become due and records are required of insurance

which customers place. Secondly, it is desirable at times to get three months' time within which to pay premiums, and, moreover, customers not infrequently make installment payments of premiums. There is in addition cancellation of policies effected; and in general books should be kept.

Under the present amendment of 1926 (Bankr. Act § 14, as amended [11 USCA § 32]), it is not necessary that proof be afforded of an intent to conceal the bankrupt's position so long as his failure was not "justified under all the circumstances." The bankrupt here was in a line of business which at least, so far as it was concerned with insurance other than life, required the maintenance of books; that is to say, the calling in which the bankrupt was engaged would in itself warrant the belief that books should have been kept, and indeed the bankrupt testified that that had been done, and in consequence there must be some significance given to his failure to produce those prior to March, 1932. Certainly, with obligations outstanding, some in the form of notes to banks, it was exceedingly important for the bankrupt to maintain records from which his financial condition could be ascertained. Karger v. Sandler (C. C. A.) 62 F.(2d) 80.

I think, therefore, specification No. 1 was properly sustained.

On February 29, 1932, the bankrupt assigned to Rena Low, his wife, commissions from the Equitable Life Insurance Company. There had been a previous assignment to her on January 13, 1931, subject to a prior assignment on January 13, 1930, in favor of the National City Bank of New York.

That the wife had independent means seems reasonably clear, and that she assisted her husband by loans is also proved by the evidence. As to that specific assignment which was made within two months of the bankruptcy, it would appear to have been at least preferential, but apparently was not fraudulent.

The records of the Equitable Assurance Company reveal that $350 was paid by virtue of the assignment to the wife for the period from January 1, 1932, to May 20, 1932. During the same period, Rena Low advanced for his account moneys greatly in excess thereof from her own means. The distinction between a preference and a transfer contemplated within section 14b of the Bankruptcy Act, subdivision 4, 11 USCA § 32 (b) (4), is pointed out in Van Iderstine v. National Discount Co. (C. C. A.) 174 F. 518.

Accordingly, the report is likewise sustained as to the dismissal of the second specification.

Settle order on notice.