In re SLUTZKIN.

No. 38799.

District Court, E. D. New York.

April 25, 1945.

568

See also 40 F.Supp. 244.

Myers & Guerin, of New York City (Joseph K. Guerin, of New York City, of counsel), for trustee.

Furst, Schwartz, Schwager & Landau, of Brooklyn, N. Y. (H. Sidney Landau and Samuel J. Penn, both of Brooklyn, N. Y., of counsel), for bankrupt.

MOSCOWITZ, District Judge.

This is another no-asset case with liabilities of $18,564.39. A hearing has been had upon the petition of the trustee in bankruptcy to review the order of the Referee in bankruptcy dated February 23, 1945, and filed in this court on March 7, 1945, dismissing the specifications of objection filed by the trustee and granting a discharge to the bankrupt.

This proceeding has had a long history —much too long—and the delay has not been in the interest of justice. On February 5, 1941, Referee Frey, the former Referee, according to the report of the present Referee, filed his decision dealing with the specifications. The present Referee states: "He disposed of the second and third specifications in said decision, showing that the bankrupt had come forward and satisfactorily explained away these specifications. He found that the first specification had been amply supported by proof and he denied the bankrupt's discharge on that ground."

The first specification charged the bankrupt with the failure to keep and preserve books or records. It stated:

"1. The bankrupt has destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of accounts or records, from which his financial condition and business transactions might be ascertained, in that the bankrupt has destroyed and failed to keep or preserve any books or records of whatsoever nature pertaining to his business and business transactions, with the result that it has been and is impossible to ascertain or verify the bankrupt's financial condition and business transactions for purposes of this proceeding or otherwise for the protection and benefit of the bankrupt's creditors herein."

A motion was thereafter made by the attorney for the bankrupt seeking permission to submit further testimony relating to the specifications of objection. On March 13, 1941, the former Referee made an order which recited that:

"The bankrupt's application for a discharge has been denied and he has procured new counsel who desire to re-try the case on the theory of cooperating with the court and the creditors. * * *

"The bankrupt's chief difficulty has been a lack of books and records. * * * The objecting creditor rightfully objects to the trouble and expense of two trials. There

is no requirement that he go through two trials. In the interest of justice an opportunity will be given the bankrupt to present additional material evidence, but the expense of making the record for same will have to be paid by the bankrupt as he has had the day in court which is allowed him by law. This proof will be taken on March 19th, at 2 P.M."

Such order was affirmed by this Court in an order of one of the judges of this court made on August 15, 1941. According to the present Referee's report, further hearings were had on the specifications on October 23, November 5, November 18, November 25, December 3, 1941, and January 15, 1942, and apparently no decision was made by the former Referee.

This matter was referred to the present Referee on August 18, 1942. Hereinafter he will be referred to as the Referee. No decision was rendered by the Referee until February 2, 1945. In this the Referee failed to comply with Rule 17(a) of the Bankruptcy Rules of this court, which states that the Referee shall make his decision within two months unless the time is enlarged by a judge of this court. That was not done here.

The Referee in his decision dated February 2, 1945, states, among other things:

"At the conclusion of these hearings nothing further seemed to have been done in the matter until September, 1943, when this Referee contacted the attorney for the trustee for the purpose of obtaining the trustee's exhibits. A conference was arranged between the attorney for the trustee and the attorney for the bankrupt in this referee's office. Thereafter on September 24th, 1943, these attorneys stipulated that this referee may decide the issues raised by the application for a discharge filed by the bankrupt herein and the specifications of objection thereto filed by the trustee herein.

"Thereafter, on or about November 15th, 1943, the attorney for the bankrupt requested this referee to make no decision for the reason that the testimony adduced by the bankrupt may have convinced the trustee that the bankrupt's failure to keep or preserve books of account or records as alleged in the first specification, may have been satisfactorily explained and justified so that no decision in the matter would be necessary if the trustee would consent to withdraw the specifications. He stated that

he would drop the referee a line, but this referee has received no communication from the bankrupt's attorney, nor has this referee been informed that either the attorney for the bankrupt or the attorney for the trustee, or the bankrupt, or the trustee, has contacted this office concerning a decision herein, although more than a year has elapsed since the making of the stipulation of September 24th, 1943.

"I am frank to state that if the parties did not require a decision in this matter, I did not intend to make one. It seems best, however, to dispose of this matter without further delay.

"For the reason that all of the hearings were before the former Referee, I have not had the opportunity to note the characteristics or demeanor of the several witnesses. I have carefully read all of the testimony and the exhibits.

"The additional evidence which the bankrupt presented pursuant to the order of March 13th, 1941, is concerned mainly with the first specification of objection, that is, the failure to keep or preserve books or records. There was some testimony concerning the debt owing to the bankrupt by Naimark, but this testimony does not afford a basis for changing the conclusion reached by the former Referee in connection with this alleged asset set forth in the fourth specification."

The Referee states "that if the parties did not require a decision in this matter, I did not intend to make one". It was his duty to decide the matter and certainly upon the evidence a decision was required denying the discharge. This Court had occasion to briefly discuss Rule 17(a) in Re Eck, 58 F.Supp. 598, and what was said there applies here with greater force because of the longer delay in making the decision. Mr. Guerin, one of the attorneys for the trustee, and Mr. Landau, one of the attorneys for the bankrupt, have made sworn statements to the effect that they know of no reason why the Referee withheld decision from January 1, 1944, up to February 2, 1945, when the decision was made.

The former Referee, in sustaining the first specification of objection, decided:

"The bankrupt has listed upwards of $16,000 in debts and has disclosed a number of purchases of real estate and securities. His occupation has been selling yarn on commission and handling it in job lots. In con-

nection with none of this business did the bankrupt keep any records. Where he sold for others he would receive some record setting forth the amount of the sale. He has kept or preserved none of these records. He was unable to give any definite account of his earnings for any year for the ten years previous to this proceeding.

"This conduct is not a sufficient compliance with the Bankruptcy Law. In re Northridge, D.C., 53 F.2d 858; In re Low, D.C., 4 F.Supp. 766; Karger v. Sandler, 2 Cir., 62 F.2d 80."

When the motion was made before the former Referee to reopen the discharge the bankrupt was represented by new counsel, his present attorneys herein. In his petition in bankruptcy he stated that he had been engaged in the business of buying and selling yarn[1] and in the statement of affairs he stated that he was a commission merchant of yarns and that he did business in his own name.[2] At the time the hearing was reopened by the former Referee and for the first time the bankrupt claimed that he was a salesman working on a commission basis.[3]

There cannot be the slightest question that this bankrupt was engaged in business and was required to keep proper books of account. This he failed to do.

■ The Referee did not hear the witnesses—he bases his opinion upon the testimony taken before the former Referee. Ordinarily, the Court would not disturb the findings of fact of a Referee who has heard the witnesses and observed their demeanor and manner of testifying unless they are clearly erroneous. However, the Referee is in no better position than the Court to decide the issues of fact as he did not hear the witnesses.

The bankrupt testified prior to the reopened hearings—and he testified to it repeatedly—that he kept no books. The bankrupt in his statement of affairs stated that he had no books of account or records. In his statement of affairs he set forth the following:

"2. Books and records.

"a. By whom, or under whose supervision, have your books of account and records been kept during the two years immediately preceding the filing of the original petition herein? No books of account.

"b. By whom have your books of account and records been audited during the two years immediately preceding the filing of the original petition herein? No books.

"c. In whose possession are your books of account and records? None."

At one of the reopened hearings and as a clear afterthought, he intimates, while he does not so testify, that he did keep some books. His testimony is as follows:

"Q. All I want to know is, where did you get the figure? A. I suppose I knew I owed this money.

"Q. You carried it in your head? A. Oh, yes, it was a simple transaction.

"Q. Did you have a book? A. I might have had a notebook where I issued the note.

---

[1] "The petition of Jacob H. Slutzkin, residing at 111–39–76th Road, Forest Hills, County of Queens, State of New York by occupation a commission merchant and engaged in the business of buying and selling yarns, at 1270 Broadway, New York City, N. Y. who states that he has not been known by any other name or trade name, for the past six years, other than Jacob H. Slutzkin. Respectfully represents: 1. Your petitioner has had his principal place of business at 1270 Broadway, in the Borough of Manhattan, City of New York, and has resided at 111–39–76th Road, Forest Hills, Borough of Queens, City of New York, N. Y. within the above judicial district, for a longer portion of the six months immediately preceding the filing of this petition than in any other judicial district."

[2] "Statement of Affairs (For bankrupt or Debtor Engaged in Business.)

"1. Nature, location and name of business.

"a. What business are you engaged in? .Commission merchant of yarns.

"b. Where, and under what name, do you carry on such business? 1270 Broadway, New York City, under the name of Jacob H. Slutzkin.

"c. When did you commence such business? 1917

"d. Where else, and under what other names, have you carried on business within the six years immediately preceding the filing of the original petition herein? 1270 Broadway, N. Y. C.—1937 –1940

"300 Fourth Ave., N. Y. C.—1927–1934."

[3] This change in position on the part of the bankrupt is not intended as a reflection on his attorneys.

"Q. You think you might have had it? A. Yes, of course.

"Q. If you did have, what has become of the book? A. What became of what records I did have, was at the time I was dispossessed—unfortunately if I had those records these questions you would not have to answer.

"Q. There is another item accounts payable, $5469.79? A. That is right.

"Q. Will you tell his Honor where you got that figure? A. I suppose it is from my records I had of the invoice I had issued.

"Q. You did issue invoices? A. Of course I did.

"Q. Did you not testify here the other day that you did not issue your own invoices?

"Mr. Lieb: Mr. Guerin is plainly wrong, and the record will indicate. He did say he issued invoices.

"Q. Did you issue invoices? A. I did.

"Q. Did you have an invoice book? A. No, just an ordinary invoice.

"Q. Out of what did you issue your invoices? A. From the invoices I would get.

"Q. Where are they? A. The same answer I can give you is the answer I have given you.

"Q. They are destroyed, to? A. That is correct.

"Q. There was a time you did keep some books and records? A. Yes, those are the records I kept.

"Q. Although you kept those records you still say you were in the employ of somebody else? A. That is right.

"Q. Where are the checkbooks you refer to? A. They are in the same place where all of the rest of the things are.

"Q. You mean they are destroyed? A. I suppose so.

"Q. Where are your canceled vouchers? A. My office was thrown out on the street and you can imagine where these things might have been.

"Q. How long did you keep these invoices? A. I would keep them probably from month to month, or whenever it was necessary. If I would get—as soon as I would get my check for the commissions from wherever it was, I probably would check back and that was all. Maybe I kept them for a month or two after that, maybe I did not.

"Q. Then they were not thrown out when you were dispossessed from your office? A. The last ones—what I did have was thrown out.

"Q. The others you had previously destroyed? A. I would not say I had destroyed all of them. I had kept them.

"Q. Then the others you had destroyed? A. If, you want to say I destroyed them, go ahead.

"Q. If you had destroyed them each month—A. I did not say each month.

"Q. Will you tell me once and for all how often you destroyed them? A. I can't tell you how often.

"Q. You did destroy them? A. I suppose I did, after a time.

*      *      *      *      *      *

"Q. All of the invoices of the Lyon Yarn Company sent to you and you in turn sent to somebody else, you have no record of that? A. No, I do not.

"Q. They were all destroyed at the time you were dispossessed or at the time you were paid? A. It was when I was dispossessed. It was in 1932 or 1931 or something like that when I was dispossessed. If there was any records it would have been there."

Certainly this testimony did not justify the Referee in concluding that this bankrupt kept books and records from which his financial condition could be ascertained. Furthermore it appears from the bankrupt's own testimony that he was dispossessed in 1931 or 1932 and that he had business transactions during each year from 1933 to 1940 inclusive. According to the Referee's report the bankrupt had the following income:

1930

Warner J. Steele—$5,067.74 (Oct. 23, pp. 5-6)

1931

Warner J. Steele—$4,054.45 (Oct. 23, pp. 5-6)

1932

Warner J. Steele—$1,449.50 (Oct. 23, pp. 5-6)

Slutzkin Yarn Co. Inc. $1,060.94 (Nov. 5, p. 6)

(In above three years bankrupt also had an income from the Lyon Yarn Co. but there are no records thereof. According to his own testimony, he earned $7000 to $8000 in the Lyon Yarn Co. in 1929, but this became gradually less until 1932 when it was very little) (Nov. 18, p. 7)

572

1933

Slutzkin Yarn Co. Inc.—$646.88 (Nov. 5, p. 6)

1934

Highland Worsted Mills—$400.00 (Nov. 18, p. 11) (unpaid)

1935

Frank Associates—$2290. (Exhibit A, Dec. 3)

1936

Frank Associates—$60.00 (Ex. A Dec. 3)

Job lot—James Talcott-Rudolph—$525.13 (Oct. 23, pp. 28, 32. Oct. 23, Exhibits D-1 to D-3. Nov. 5, pp. 26-29 and Ex. G-1, G-2 and H. Nov. 18, pp. 32-33)

1937

Tru-Fit Knitwear—$2500.00 (Oct. 23, pp. 36-37; Exhibits F-1 to F-4)

1938

Tru-Fit Knitwear—$155.00 (October 23, pp. 36-37; Exhibits F-5; F-6)

Irving Worsted—$2946.00 (Nov. 5, pp. 10-11)

1939

Irving Worsted—$2407.17 (Nov. 5, Ex. B)

1940

Worsted Yarns Corp.—$22.50 (Oct. 23, pp. 14-15—Exhibit A)

Admittedly the bankrupt kept no books or records between 1933 and 1940. He seeks to justify the position that he did not keep books on the ground that he was merely employed as a salesman. The evidence indicates very clearly that he was engaged in business. He so swore in his petition and in his statement of affairs. The bankrupt in his schedules states that he owes for unsecured claims $16,814.39 and for accommodation paper $1,750, that is total liabilities of $18,564.39 and no assets. Where is the $16,814.39? This among other things the bankrupt has failed to disclose.

The Referee has made the following statement at page 11 of his opinion:

"There has been no evidence to contradict the bankrupt's testimony that he was dispossessed and that his office furniture was placed 'in the back street', that his personal records were thereby lost, and that all of this happened while he was out of town. * * *

"The only purpose for maintaining books and records is to enable the creditors to ascertain the financial condition and business transactions of the bankrupt. When this information can be determined with reasonable accuracy from admissible records other than the bankrupt's, the requirement of the Act has been satisfied when the information which the bankrupt has to furnish his creditors has been obtained."

The Referee would relieve a bankrupt of keeping books if his creditors and those with whom he engaged in business kept books which show the financial transactions with the bankrupt. There is no such rule of law. A bankrupt cannot be absolved from keeping books because his creditors and those with whom he had business transactions keep books. See Benjamin v. Jaspan, 2 Cir. 1944, 144 F.2d 58, cert. denied 65 S.Ct. 134; In re Low, D.C., N.Y.1933, 4 F.Supp. 766; Karger v. Sandler, 2 Cir., 1932, 62 F.2d 80; Rosenberg v. Bloom, 9 Cir. 1938, 99 F.2d 249. Furthermore, here the bankrupt's financial condition cannot be fully ascertained as there is no showing by him of what disposition was made of his assets. Section 14, sub. c(2), of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(2), provides that a bankrupt is not entitled to his discharge if he has—

"(2) Destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case."

The bankrupt failed to keep books of account or records from which his financial condition might be ascertained and did this wilfully and with intent to defraud his creditors and to conceal his financial condition. The evidence is ample to sustain specification number 1. The bankrupt is not entitled to his discharge.

Settle order on notice.