𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

McNeal Surratt, et als., v. A. T. Eskridge, Trustee in
Bankruptcy.

September 22, 1921.

Absent, Burks, J.

1. Bankruptcy and Insolvency—*Preference Within Four Months
of Bankruptcy—Case at Bar.*—A grantor knew, at the time of
conveyances to his son and his wife, that he was insolvent, in
the sense that he did not have the then present ability to pay,
and that his property would not realize enough to pay all of
his creditors in full if they pressed for prompt payment. He
did not, however, make the conveyances with any intent to delay,
hinder or defraud creditors, within the meaning of Code of
1919, section 5184, or within the meaning of the common law,
but made the conveyances with the sole *bona fide* purpose of
preferring the grantees to the extent of their *bona fide* debts.
Moreover, the grantor did not contemplate that he would go or
be forced into bankruptcy at any time, nor were the conveyances
made with the intent to deprive his creditors of any rights they
might thereafter have under the bankruptcy act. The grantees
did not know or have reasonable cause to believe that the con-
veyances were intended to give them a preference. The
grantor by the unlooked-for severity of his creditors was forced
into bankruptcy within four months of the making of the con-
veyances.

   *Held:* That the conveyances were not invalid as made with the
   intent and purpose on the bankrupt's part to hinder, delay or
   defraud his creditors or any of them, within the meaning of
   section 67-e of the bankruptcy act of 1898 (Comp. St. sec. 9651),
   and it was not even contended that the grantees were affected
   with the constructive knowledge mentioned in section 60-b of
   that act, so as to bring the case within the condemnation of
   that section.

2. Bankruptcy and Insolvency—*Conveyance Within Four Months
of Bankruptcy—Preferences—Actual or Constructive Fraud.*—
Where a conveyance or transfer is made within four months

of the filing of a petition in bankruptcy, the existence of the mere intention on the part of the bankrupt at the time of the conveyance to prefer certain creditors to the exclusion of others is not such constructive fraud, or fraud *per se*, as must be regarded as embodying the intent and purpose on the part of the bankrupt to hinder, delay or defraud his creditors, within the meaning of section 67-e of the bankruptcy act (Comp. St. sec. 9651). The intent and purpose of the bankrupt to hinder, delay or defraud his creditors must be an actual intent to defraud creditors.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Preferences—Common Law and Statute.*—Under the Virginia statute against fraudulent conveyances it is well settled that an insolvent debtor, known by himself at the time to be insolvent, may make a valid conveyance of a portion or the whole of his assets to a *bona fide* creditor or creditors, in satisfaction or on account of existing indebtedness, if that is the sole purpose of the debtor, and the transfer is for full value, although such conveyance may and is intended by the grantor and grantee or grantees to give such creditor or creditors a preference to the exclusion of others in the distribution of the assets of the debtor.

4. BANKRUPTCY AND INSOLVENCY—*Preferences—Section 67-e of the Bankruptcy Act of 1898 (Comp. St., sec. 9651).*—It is not the mere intent to make or the mere result of making a preference between creditors which section 67-e of the bankruptcy act of 1898 (Comp. St., sec. 9651) condemns, but the superadded intent on the part of the debtor to do something further, to-wit, to deprive the creditors, or some one of them, of something they are lawfully entitled to.

5. BANKRUPTCY AND INSOLVENCY—*Preferential and Fraudulent Transfers Distinguished.*—In a preferential transfer the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among all creditors which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent transfer the fraud is actual—the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him.

6. BANKRUPTCY AND INSOLVENCY—*Preference as Evidence of Intent to Defraud Creditors.*—The fact that an insolvent debtor has, by a conveyance or transfer, made a preference among his creditors, is a circumstance which, along with all the other circumstances in the case, will be taken into consideration in determining whether there was an actual intent to defraud creditors, but the fact of preference is not conclusive of the intent to defraud.

Appeal from a decree of the Circuit Court of Pulaski county. Decree for complainant. Defendants appeal.

*Reversed and dismissed.*

This suit involves the question of whether certain conveyances of property, made by the bankrupt within four months prior to the filing of the petition upon which he was adjudged a bankrupt, to *bona fide* creditors, for a consideration not in excess of the debts of such creditors and of the full value of the property, were made "with the intent and purpose on his" (the bankrupt's) "part to hinder, delay or defraud his creditors, or any of them," and were hence null and void under the provisions of subsection e of section 67, (hereinafter referred to as 67-e) of the bankrupt act of 1898, as amended in 1903, 1906, 1910 and 1917. (Comp. St., sec. 9651.)

The conveyances in question were made on March 15 and 16, 1915, and thereafter duly and promptly recorded. The grantor thereafter prepared and intended to file a voluntary petition in bankruptcy. This petition was completed and sworn to on April 21, 1915, ready to be filed, but before it was filed creditors of the grantor, on May 15, 1915, filed a petition upon which the bankrupt was, on May 28, 1915, adjudicated an involuntary bankrupt, at which time the appellee was appointed the trustee in bankruptcy of such grantor.

One of the conveyances was made to a son of the grantor in payment of a pre-existing debt to him and in accordance with a promise of the grantor made before the grantor became indebted to the creditors in bankruptcy. The other conveyance was made to the wife of the grantor, at the request of another son, in payment of a pre-existing debt to him, and likewise in accordance with a promise of the grantor made before the grantor became indebted to the creditors in bankruptcy. The indebtedness to these two sons,

which furnished the consideration for the two conveyances aforesaid, as is affirmatively shown by the evidence in the case, arose in December, 1911, when the assets of a partnership in a mercantile business, theretofore owned by the father and sons, were sold and the purchaser paid the purchase money in part by conveying certain real estate to the father alone, instead of to him and the two sons, and the father, without objection on the part of the sons, afterwards sold this real estate and used the money in part to purchase the very real estate which was conveyed by said deeds of March 15 and 16, 1915, upon the promise on the part of the father that he would "protect the interest" of the sons in such money.

The evidence also shows that, when the father bought the real estate which was conveyed to the son, Stephen, by the deed of March 15, 1915, he intended it for this son at the time he bought it. This property had a tenant in it when it was bought, and, when the tenant moved out in October, 1913, the father put the son, Stephen, in possession of it and the latter moved into it at that time and has since been in possession of it, claiming it as his own. That as of that time the father ceased to charge himself with interest on his $800.00 of indebtedness to this son, charged the son with this property at $800.00, the valuation of the property, in satisfaction of the debt, and, as he had put a lien on it in favor of the bank for $300.00, the father, at this time, gave this son his note for $300.00 as a set-off against the lien, and the son assumed the payment of this bank debt, and thereafter made payments of the interest and $50.00 on the principal of such debt. The $300.00 note given this son was unpaid at the time of the adjudication in bankruptcy.

The evidence in the case shows that at the time the conveyances of March 15 and 16, 1915, were made, the grantor was, as sole owner, engaged in the retail mercantile business, and that his stock of goods would have inventoried at

cost prices about $3,800.00. That his bills receivable, consisting of store accounts on his books, due him by customers, would have aggregated about $1,800.00. And that, not including the real estate conveyed, as aforesaid, he owned four vacant lots, which were subject to a lien, but which were afterwards sold by the trustee in bankruptcy at public auction at a price which after paying such lien left a balance of $179.62, making a total of $5,779.62; that his total indebtedness, then, outside of that satisfied by the conveyances aforesaid, was about $4,000.00, leaving a net surplus upon these figures of $1,779.62.

The evidence further shows that there was, at that time none of the debts of the grantor in the hands of any attorney, or collection agency, for collection, so far as the grantor knew. The grantor testifies in substance that he then believed that if his creditors would give him a reasonable time to pay along on his debts he would be able to pay them all in full from his assets left after the conveyances aforesaid had been made.

The evidence further shows, however, that unknown to the grantor, an attorney had received for collection one of the debts of the grantor, an open account for $265.00, on March 13, 1915, but this attorney did not write to the grantor about it until March 16, and the letter does not appear to have been received by the grantor until after that date. On March 19, the grantor gave the attorney a note covering this debt, payable April 10, 1915, with interest, and on April 16 he made a small payment on it. Immediately following that time, this attorney received a number of other claims against the grantor, and the attorney, without any further communication with him, instituted suits against the grantor as follows: On April 16, 1915, on the claim first above mentioned for $265.00; on April 17, 1915, on other claims for $606.00 and $38.83; and on April 19, 1915, on another claim for $19.60. This attorney testifies

in the case to the effect that while he was pressing the debtor for the payment of the claim first mentioned, before suit was brought on it, the debtor stated to the attorney "that he could not pay, that he owed a good many debts, but that he wanted to pay them if he could. I think he stated that he had been giving checks dated ahead and that creditors were pushing him for payment. I know that I was insisting very strongly for my claim, feeling as though he were in failing circumstances from information I had gotten from him and others. *. * * My recollection is that he stated that if his creditors would give him some time, he hoped to pull through, but if they pressed him he could not do it. He stated that he owed a large amount and was making an effort to pay off all his creditors. He seemed to be fighting for time * * *."

It further appears from the evidence that the debts of the grantor asserted in the bankrupt proceedings aggregated ................................. $3,764.00
which included the bank debt of .............. 300.00
which was a lien on the real estate conveyed to his son, Stephen, as aforesaid. Deducting this, there were left of these debts ...................... $3,464.00

The trustee had an inventory and appraisement made on June 3, 1915, which showed a total stock of goods valued at $2,121.00, it not appearing whether the inventory was made at or below cost.

There were bills receivable on the books of the bankrupt at this time aggregating $1,400, but which the appraisers "estimated and reported as being uncollectible, or probably . five per cent of same could be collected."

The trustee sold the stock "in June or July, 1915," and realized from same and bills receivable $1,559.44.

The evidence in the cause further shows that at the time of said conveyances in March, 1915, the sons and wife of the grantor did not know that he was insolvent, if he was

then insolvent, and did not know that such deeds were made to hinder, delay, or defraud creditors of the grantor, if they were in fact made with such intent on the part of the grantor, nor did they or either of them have reasonable cause to believe that such conveyances were intended to effect a preference among the creditors of the grantor.

In the decree of November 15, 1917, which settled the principles of the cause, and upon which the final decree was based, this is said:

"* * * the court doth consider that the conveyance dated March 15, 1915, from McNeal to Stephen F. Surratt, and the conveyance dated March 16, 1915, from McNeal Surratt to Alice M. Surratt, filed as exhibits 'C' and 'D,' respectively, with the bill, were made within four months of the adjudication of said NcNeal Surratt as a bankrupt when said McNeal Surratt *was insolvent to his own knowledge,* and were made in consideration of pre-existing indebtedness from said McNeal Surratt to Stephen F. Surratt and M. T. Surratt, filed as exhibits 'C' and 'D,' respectively (the latter having directed the deed, Exhibit 'D,' to be executed to Alice M. Surratt, his mother, instead of to himself), and with the intent to prefer said Stephen F. Surratt and M. T. Surratt as creditors, and are preferences to the extent of the value of the properties thereby conveyed respectively, voidable and recoverable, under the provisions of section 67-e of the Federal bankruptcy act, though not voidable under the Virginia statutes of fraudulent and voluntary conveyances." (Italics supplied.)

The first decree of February 24, 1919, held that the value of the real estate conveyed to the son, Stephen, by the deed of March 15, 1915, was $700.00; that the value of the property conveyed to the wife by the other deed was $800.00; and provided that the sum of $700.00 with interest from March 15, 1915, be charged as a lien against the former property, less the bank debt of $250 as it then stood, and

that the sum of $800.00 with interest from March 16, 1915, be charged as a lien against the latter property; and that unless these sums were paid to the trustee in bankruptcy within sixty days from the rising of the court, a special commissioner thereby appointed, was directed to sell such property, etc. · . ·

*F. W. Morton,* for the appellants. ·

*H. C. Gilmer;* for the appellee.

SIMS, J., after making the foregoing state...ent, delivered the following opinion of the court:

[1] 1. We are of opinion that the evidence in the record before us presents a case in which the grantor knew, at the time he made the conveyances in question, that he was insolvent, in the sense that he did not have the then present ability to pay and that his property would not realize enough to pay all of his creditors in full if they pressed for prompt payment. But we are also of the opinion that the grantor did not make the conveyances with any "intent to hinder, delay or defraud creditors * · * * or other persons of or from what they are or may be entitled to," within the meaning of the statute in Virginia against fraudulent conveyances (now Code 1919, sec. 5184), or within the meaning of the common law; but made the conveyances with the sole *bona fide* purpose of preferring the grantees as creditors to the extent of their *bona fide* debts, which did not, respectively, exceed the value of the property conveyed by the respective deeds. And we are of the further opinion that at the time the conveyances were made the grantor did not contemplate that he would voluntarily go or be forced into involuntary bankruptcy at any time, and did not make the conveyances with the intent to defeat or deprive his credi-

tors of any rights they might thereafter have under the bankrupt act; that the unlooked for severity of the creditors in instituting suits against him forced the grantor into bankruptcy unexpectedly to and not anticipated by him at the time of the conveyances; and that the grantees at the time of the conveyances did not know or have reasonable cause to believe that it was intended thereby to give them a preference among the creditors of the grantor.

2. The sole question presented for our decision by the assignments of error is whether, upon this statement of facts, the conveyances in question were made with the intent and purpose on his (the bankrupt's) "part to hinder, delay or defraud his creditors or any of them," within the meaning of section 67-e of the bankrupt act of 1898, as amended in 1903, 1906, 1910 and 1917?

This question must be answered in the negative.

The question under consideration is one of some nicety, but it is unattended with any real difficulty in so far as the principles involved are concerned. Difficulty often arises in the application of such principles to the facts of particular cases; but in view of the circumstances of this particular case which appear in evidence, we have found no difficulty in such application.

The question we have to deal with was the subject of consideration by this court in *Webb* v. *Lynchburg Shoe Co.*, 106 Va. 726, 56 S. E. 581, and again upon the rehearing of that case, reported in 107 Va. 807, 60 S. E. 130. In that case the facts adverted to in the opinion were that the bankrupt on October 1st sold the whole of her property, except household goods amounting to $250, which she claimed as exempt (the property sold consisting of a stock of goods and book accounts), for $7,500, $7,100 of which she distributed among three creditors, and paid the residue in small sums upon certain other debts, leaving other creditors' debts amounting to $5,864.47 on which nothing

was paid.  On the very next day after said sale the bankrupt employed counsel to prepare for her a voluntary petition in bankruptcy.  This petition was sworn to on October 4th, filed on October 7th, and she was adjudicated a bankrupt on October 10th.  Commenting on these facts this court said in the opinion delivered by Judge Keith: "* * * in the case before us it appears that the debtor *in contemplation of bankruptcy* and immediately before filing her petition, being insolvent, disposed of substantially the whole of her estate to certain creditors," etc. (Italics supplied.) What the case holds, as stated in the conclusion of the opinion, is as follows: "In this case (without going into a discussion of the evidence in detail), we think the facts adverted to  *  *  *  were such as to entitle the plaintiff in error to have a jury say whether Webb made the payment under consideration with intent to hinder, delay or defraud her creditors, and that instruction No. 5, asked for by the plaintiff in error" (which would have submitted that question of fact to the jury), "should have been given."

[2]  There are, it is true, expressions in the opinion in the *Webb Case* on the first hearing, and also upon the rehearing, which are capable of the construction that the court meant to say that where the conveyance or transfer is made within four months of the filing of a petition in bankruptcy, the existence of the mere intention on the part of the bankrupt at the time of the conveyances to prefer certain creditors to the exclusion of others, is such constructive fraud, **or** fraud *per se*, as must be regarded as embodying the "intent and purpose on his" (the bankrupt's) "part to hinder, delay or defraud his creditors," within the meaning of sec. 67-e of the bankrupt act aforesaid.  Much of the argument before us has been over the question of whether this court in the *Webb Case* did so hold or intend to so hold, or whether it held, or intended to hold, that the mere intent of the bankrupt in such case to prefer certain creditors to the ex-

clusion of others, is not such constructive fraud, or fraud *per se,* as must be regarded as embodying the intent and purpose aforesaid mentioned in sec. 67-e of the bankrupt act. We think that the latter and not the former is the true meaning and intent of the holding of this court in the *Webb Case.* We think that what this court in that case meant to hold and actually held was that the "intent and purpose" in question, in order to bring the conveyance or trasfer within the condemnation of sec. 67-e aforesaid, must be an actual intent to defraud creditors—that is, an actual intent to deprive creditors of something to which they were lawfully entitled.

[3] Now, at common law and under the Virginia statute against fraudulent conveyances, it is well settled, and is unquestioned before us, that an insolvent debtor, known by himself at the time to be insolvent, may make a valid conveyance of a portion or the whole of his assets to a *bona fide* creditor or creditors, in satisfaction or on account of existing indebtedness, if that is the sole purpose of the debtor, and the transfer is for full value, although such conveyance may and is intended by the grantor and grantee or grantees to give such creditor or creditors a preference to the exclusion of others in the distribution of the assets of the debtor. In such case other creditors are not *lawfully entitled* to any share in the assets transferred to the preferred creditor or creditors. What the law sanctions cannot be regarded as unlawful. In such case, it is only where the transfer is not made with the sole purpose on the part of the debtor of making a *bona fide* preference among his creditors, and where that is merely an incident of the transaction, used as a cloak for some other purpose which is fraudulent in actual intent, that the transfer is regarded as unlawful.

As said by Lord Mansfield in *Codogan* v. *Kennett,* 2 Cowp. 432, concerning the statute 13 El. c. 5, and the com-

mon law: "* * * the statute does not militate against
any transaction *bona fide,* and when there is no imagination
of fraud. And so is the common law. But if the transac-
tion be not *bona fide,* the circumstances of its being done
for a valuable consideration will not alone take it out of the
statute."

[4] And so in the case of a conveyance by the debtor,
making a preference among his creditors, executed within
four months of the filing of the petition in bankruptcy,
which does not fall within the condemnation of section
60-b of the bankrupt act (Comp. St. Sec. 9644), be-
cause there is an absence of the grantee's having rea-
sonable cause to believe that the enforcement of the
transfer would effect a preference among the creditors
of the grantor. But while, in such case, the mere making
of the preference does not show an intention on the part
of the grantor to take from the other creditors anything to
which they are lawfully entitled, so as to bring the case
within the condemnation of 67-e of the bankrupt act, if the
conveyance were made by the grantor in contemplation of
bankruptcy, and for the actual purpose of defeating the
operation of that act in the matter of the equal distribution
of assets among creditors which it requires, that would be
an actual intent to deprive creditors of something to which
they would be lawfully entitled and would bring the case
within sec. 67-e of such act. And so would any other actual
fraudulent intent against creditors, existing on the part of
the debtor at the time of the conveyance, superadded to the
intent to make a preference. It is not the mere intent to
make, or the mere result of making a preference between
creditors which section 67-e condemns; but the superadded
intent on the part of the debtor to do something further,
to-wit, to deprive the creditors, or some one of them, of
something they are lawfully entitled to.

And such is the holding in the case of *Coder* v. *Arts,* 213

U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, decided since the decision of the *Webb Case,* with respect to the proper construction of 67-e of the bankrupt act aforesaid. In that case the bankrupt was insolvent at the time he made the conveyance in question, and knew at the time that he was insolvent. The conveyance, a mortgage, was made May 2, 1904. The debtor filed his voluntary petition in bankruptcy on July 27, 1904. At the time the mortgage was given neither the creditor preferred thereby, nor his agent acting in the matter had reasonable cause to believe that it was intended to give him a preference. The circuit court of appeals certified the above in its findings of facts, and also that the bankrupt "did not make the mortgage of May 2, 1904, with any intent or purpose on his part to hinder, delay or defraud his creditors or any of them."

What the Supreme Court says in the unanimous opinion of the court in the *Coder Case* is so exhaustive and conclusive upon the subject we have under consideration, that we shall quote at length from the opinion as follows:

"The decision of the case requires consideration of certain sections of the bankruptcy act. Section 60, subdivision a (as amended by sec. 13, 32 Stat. at L. 799, chap. 487, U. S. Comp. Stat. Supp. 1907, p. 1031), provides:

" 'A person shall be deemed to have given preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition, and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of same class.'

"Such preferences may be set aside under the condition named in subdivision b of sec. 60 (as amended by sec. 13), which is as follows:

" 'If a bankrupt shall have given preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.'

"Manifestly, this conveyance could not be set aside under the provisions of sec. 60-b. For, while it is true that under the facts found, the conveyance might be deemed a preference, as a transfer of property which would have the effect of enabling one creditor to obtain a larger percentage of his debt or claim than other creditors of the same class, yet, as it is distinctly found that neither the mortgagee nor his agent had any reasonable cause to believe that it was intended to give a preference, the same could not be avoided under sec. 60-b.

"The reliance in this case is upon sec. 67-e of the act. This section, so far as it is necessary to consider it, reads as follows:

" 'd. Liens given or accepted in good faith, and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act.

" 'e. That all conveyances, transfers, assignments, or encumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged

a bankrupt, and the same is not exempt from execution and
liability for debts by the law of his domicile be and remain
a part of the assets and estate of the bankrupt, and shall
pass to his said trustee, whose duty it shall be to recover
and reclaim the same by legal proceedings or otherwise for
the benefit of the creditors.' (30 Stat. at L. 564, chap. 541,
U. S. Comp. Stat. 1901, p. 3449.)

"It is the contention of the appellant that, as the neces-
sary consequence of the giving of the mortgage under con-
sideration was to hinder, delay, or defraud creditors of the
bankrupt in the collection of their debts, Armstrong must
be presumed to have intended such consequences, and the
mortgage is therefore voidable.

"A consideration of the provisions of the bankruptcy law
as to preferences and conveyances shows that there is a
wide difference between the two, notwithstanding they are
sometimes spoken of in such a way as to confuse the one
with the other. A preference, if it have the effect pre-
scribed in sec. 60, enabling one creditor to obtain a greater
portion of the estate than others of the same class, is not
necessarily fraudulent. Preferences are set aside when
made within four months, with a view to obtaining an equal
distribution of the estate, and in such cases it is only essen-
tial to show a transfer by an insolvent debtor to one who,
himself or by his agent, knew of the intention to create a
preference. In construing the bankruptcy act this distinction
must be kept constantly in mind. As was said in *Githens*
v. *Shiffler*, 112 Fed. 505: 'An attempt to prefer is not to be
confounded with an attempt to defraud, nor a preferential
transfer with a fraudulent one.' *In re Maher*, 144 Fed. 503-
505, it was well said by the district court of Massachusetts:

[5] " 'In a preferential transfer the fraud is constructive
or technical, consisting in the infraction of that rule of equal
distribution among all creditors which it is the policy of
the law to enforce when all cannot be fully paid. In a fraud-

ulent transfer the fraud is actual—the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him.'

"Is the conveyance voidable under subdivision e, sec. 67? Under the terms of that subdivision a fraudulent conveyance is made void as to creditors, except as to grantees in good faith and for present fair consideration. The provisions saving conveyances to purchasers in good faith and for a present fair consideration prevents such conveyances from being declared void by the act, although they have been made by the bankrupt with the intent on his part to hinder, delay, or defraud his creditors. But the act does not dispense with the necessity of showing, to avoid a conveyance or transfer under section 67-e, that the bankrupt had the actual intent to hinder, delay, or defraud creditors. What is meant when it is required that such conveyances, in order to be set aside, shall be made with the intent on the bankrupt's part to hinder, delay or defraud creditors? This form of expression is familiar to the law of fraudulent conveyances, and was used at the common law, and in the statute of Elizabeth, and has always been held to require, in order to invalidate a conveyance, that there shall be actual fraud; and it makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying, or defrauding creditors. The question of fraud depends upon the motive. Kerr, Fraud & Mistake, 196, 201. The mere fact that one creditor was preferred over another, or that the conveyance might have the effect to secure one creditor and deprive others of the means of obtaining payment, was not sufficient to avoid a conveyance; but it was uniformly recognized that, acting in good faith, a debtor might thus prefer one or more creditors. *Stewart* v. *Dunham,* 115 U. S. 61, 20 L. Ed. 329, 5 Sup. Ct. Rep. 1163; *Huntley* v. *Kingman & Co.,* 152 U. S. 527, 38 L. Ed. 540, 14 Sup. Ct. Rep. 688.

"We are of opinion that Congress, in enacting 67-e, and using the terms "to hinder, delay, or defraud creditors," intended to adopt them in their well-known meaning as being aimed at conveyances intended to defraud. In section 60, merely preferential transfers are defined, and the terms on which they may be set aside are provided. In 67-e, transfers fraudulent under the well-recognized principles of the common law and the statute of Elizabeth are invalidated. The same terms are used in sec. 3, subdivision 1, in which it is made an act of bankruptcy to transfer property with intent to hinder, delay or defraud creditors. . Such transfers have been held to be only those which are actually fraudulent. It was so held in *Lansing Boiler & Engine Works* v. *Ryerson*, 63 C. C. A. 253, 128 Fed. 701. Considering the language, which is identical with that in sec. 67-e, the circuit court of appeals, speaking through Judge Severns, said:

" 'The language of subsection 1 of sec. 3 is the familiar language of statutes against conveyances fraudulent as against creditors, and we think there can be no doubt that Congress intended the words employed should have the same construction and effect as have for a long period of time been attributed to those words. *Githens* v. *Shiffler* (D. C.), 112 Fed. 505. And, so construed, the test of the conveyances intended by subsection 1 of section 3 is that of the *bona fides* of the transfer. Loveland, Bankr., 2d ed. sec. 51. For it is the well settled law that a conveyance made in good faith, whether for an antecedent or present consideration, is not forbidden by such statutes, notwithstanding the effect may be that it hinders or delays creditors by removing from their reach assets of the debtor.'

"And to the same effect is the decision of the circuit court of appeals of the second circuit in *Re Bloch*, 74 C. C. A. 250, 142 Fed. 676, in which that court had occasion to consider the meaning of sec. 67-e as applicable to 57-g of the act as amended 1903, requiring the surrender of preferences void-

able under sec. 60, subdivision b, or of fraudulent conveyances voidable under sec. 67-e, in order to make proof of claim, and, in considering sec. 67-e, Judge Townsend, speaking for the court said:

" 'We think Congress must be presumed to have intended by the introduction of sec. 67-e to require a surrender only of such transfers as would have been fraudulent at common law, or would constitute an act of bankruptcy under section 3 of the act. In *Githens* v. *Shiffler, supra,* the bankrupt used the proceeds of a sale of property to prefer certain creditors. The court, upon a review of the authorities, held that sec. 3 applied only to those transfers which, according to the established course of authority, constituted a fraudulent transfer at the time of the passage of the bankruptcy act, and held that a mere preferential transfer, as distinguished from a fraudulent one, was not an act in bankruptcy under said sec. 3.

" 'The question as to whether a transfer is made with intent to hinder, delay or defraud depends upon whether the act done is a *bona fide* transaction. Loveland, Bankr. 391; *Cadogan* v. *Kennett,* 2 Cowp. 435; *Lansing Boiler & Engine Works* v. *Ryerson, supra.* An intent to defraud is the test of the right to avoid a transfer under sec. 67-e.'

"In dealing with this question this court said, in *Thompson* v. *Fairbanks,* 196 U. S. 516, 49 L. Ed. 577, 25 Sup. Ct. Rep. 306:

" 'There is no finding that, in parting with the possession of the property, the mortgagor had any purpose of hindering, delaying, or defrauding his creditors or any of them. Without a finding to the effect that there was an intent to defraud, there was no invalid transfer of the property within the provisions of sec. 67-e of the bankruptcy law.'

"That it is essential to show actual fraud in order to invalidate conveyances under sec. 67-e, is the view of the textwriters upon this subject. Loveland, Bankr., 3d ed., 476;

Collier, Bankr., 6th ed., 562; 1 Remington, Bankr., sec. 1498."

It is true the *Coder Case* was decided upon the finding of facts by the court below; the opinion more than once, in parts not quoted, alludes to that situation. And that finding of facts certified that the bankrupt did not make the transfer in question "with any intent or purpose on his part to hinder, delay or defraud his creditors or any of them." But if the Supreme Court, in the *Coder Case,* had had a case before it in which that actual intent existed at the time the transfer was made (the conveyance not having been made for a present consideration), there can be no doubt that the court would have held that the transfer was void under sec. 67-e of the bankrupt act. But this does not in any way impair the fact that the holding of the Supreme Court is precisely what we have set forth above as our understanding of the holding of our own court in the *Webb Case.*

[6] And while, of course, the fact that an insolvent debtor has, by the conveyance or transfer in question, made a preference among his creditors, is a circumstance which, along with all the other circumstances in the case, will be taken into consideration in determining whether there was an actual intent to defraud creditors, our finding of facts, above set forth, is to the effect that in the case before us, the superadded fact of the existence of an actual intent on the part of the grantor to defraud his creditors was absent. So that we have before us precisely the case which was before the Supreme Court in the *Coder Case*—that is, one in which the facts are that the insolvent grantor, knowing himself at the time to be insolvent, made the transfer in question with the sole intent and purpose to prefer certain *bona fide* debts to the exclusion of the debts of other creditors. Hence, the conclusion necessarily follows that the case before us does not fall within the operation of sec. 67-e aforesaid.

And it is not even contended before us that the grantees were affected with the constructive knowledge mentioned in sec. 60-b aforesaid, so as to bring the case within the condemnation of that section.

It is true that in *Dean* v. *Davis*, 242 U. S. 438, at p. 444, 61 L. Ed. 419, at p. 444, 37 Sup. Ct. 130, at p. 131, which is cited and relied on by appellee, in the opinion of the Supreme Court, delivered by Mr. Justice Brandeis, this is said: "A transfer, the intent (or obviously necessary effect) of which is to deprive creditors of the benefits sought to be secured by the bankrupt act 'hinders, delays, or defrauds creditors,' within the meaning of sec. 67-e." But the court is there referring to the obviously necessary effect which the debtor actually had in mind, or in contemplation, at the time of the transfer. In that case the facts were, as stated in the opinion of the court, that the debtor not only knew that he was insolvent and that he was making a preferential payment, but that he made such preferential payment to avoid a threatened criminal prosecution, and the court said that he must have known that suspension of his business and bankruptcy would result from the giving and recording of such a mortgage. That is to say, he must have made the transfer in actual contemplation of bankruptcy. And although this was true, the court does not even then hold that such facts *per se* show that the case comes within section 67-e aforesaid: but, immediately following the quotation next above, the opinion proceeds as follows:

"*Van Iderstein* v. *National Discount Co.*, 227 U. S. 575, 582, 57 L. Ed. 652, 654, 33 Sup. Ct. Rep. 348, points out the distinction between the intent to prefer and the intent to defraud. * * * making a mortgage to secure an advance with which the insolvent debtor intends to pay a pre-existing debt does not necessarily imply an intent to hinder, delay or defraud creditors. * * *." (On the other hand)—

"The fact that the money advance is actually used to pay a debt does not necessarily establish good faith. It is a question of fact in each case that the intent was, with which the loan was sought and made." All of which is in entire accord with the *Coder Case.*

This is made still plainer by reference to the case of *Van Iderstein* v. *National Discount Co.,* 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652. The Supreme Court affirmed the circuit court of appeals in that case. In the opinion of the circuit court of appeals, reported in 23 A. B. R. 345, 174 Fed. 518, 98 C. C. A. 300, this is said: "There is a marked distinction between a preferential payment and a fraudulent conveyance. Every preferential payment must to some extent hinder and delay creditors, but it is not necessarily a fraudulent conveyance."

The *Coder Case* is here referred to and quoted from. The opinion then continues as follows:

"A preferential payment may be constructively fraudulent, but it is not in and of itself a fraudulent conveyance. It can only become the latter in the unusual case where actual fraud in addition to the preference is established. Thus a secret trust in favor of a person making such payments might turn a mere preference into a fraudulent conveyance. But there is no proof in this case of any intent to hinder or defraud creditors more than the preferential payments in themselves would have hindered them."

In the opinion of the Supreme Court in the case last cited, (227 U. S. at p. 582, 33 Sup. Ct. at p. 345, 57 L. Ed. at p. 654), this is said:

"There is no necessary connection between the intent to defraud and that to prefer, but inasmuch as one of the common incidents of a fraudulent conveyance is the purpose on the part of the grantor to apply the proceeds in such manner as to prefer his family or business connections, the existence of such intent to prefer is an important matter to be consid-

ered in determining whether there was also one to defraud. But the two purposes are not of the same quality, either in conscience or in law, and one may exist without the other. The statute recognizes the difference between the intent to defraud and the intent to prefer and also the difference between a fraudulent and a preferential conveyance. One is inherently and always vicious; the other innocent and valid, except when made in violation of the express provisions of a statute."

The decrees under review must therefore be reversed, and we will enter a decree dismissing the bill with costs to applicants.

*Reversed and dismissed.*