## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## BANK OF COMMERCE v. ROSEMARY AND THYME, INC., ET AL.

January 13, 1978.

Record No. 761502.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Jon Marsh Worden (Cantor and Cantor,* on briefs), for appellant.

*Edward T. Caton (Barry Randolph Koch,* on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this creditors' rights suit, we consider whether a fraudulent conveyance has been made by an insolvent corporation.

In March of 1976, appellant Bank of Commerce, the plaintiff below, filed a bill in equity against appellees Rosemary and Thyme, Inc., Edmund C. Ruffin, Nabil D. Kassir and Khalid A. Kassir seeking relief under Code § 55-80.[1] Plaintiff, a creditor of Rosemary and Thyme, Inc., alleged that the corporate defendant, acting through the individual defendants, its directors, made a payment to another creditor-bank, the Peoples Bank of Virginia Beach, with intent to hinder, delay and defraud defendant's creditors. The defendants demurred on the grounds that (1) the plaintiff had a "full, adequate and complete remedy at law for money damages" and (2) the payment to Peoples Bank "was not, in law, a fraudulent conveyance."

The trial court overruled the demurrer as to ground one and sustained it as to ground two, dismissing the suit in a September 1976 decree from which we granted plaintiff an appeal. Defendants assigned cross-error to the action of the chancellor

---

[1] Insofar as pertinent here, the statute provided:
"Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, . . . with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, . . . be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

in overruling the demurrer on ground one, but in the view we take of the case, it is necessary to discuss only the correctness of the trial court's action in sustaining the demurrer.

The plaintiff's bill of complaint states the following case, the effect of the demurrer being to admit as true all material facts which are well-pleaded. From November of 1973 to August of 1974, the defendant corporation, engaged in the retail sale of women's clothing, became indebted to the plaintiff for $1,805.05. Judgment in that amount was obtained on some unspecified date and remains unsatisfied.

On April 17, 1975, "and prior thereto," defendant corporation "was unable to pay its trade indebtedness to creditors and was insolvent". In March of that year, the said defendant "was indebted" to Peoples Bank in the amount of $7,215.17 "by virtue of a promissory note" on which the individual defendants, "officers, directors and the controlling stockholders" of the defendant corporation, "were endorsers or co-makers". On March 15, 1975, the corporate defendant "used $7,215.17 of its assets for the purpose of applying it to the indebtedness to the Peoples Bank" thereby releasing, it is alleged, the individual defendants from liability in that amount.

The plaintiff further asserted that the payment to Peoples Bank "had the effect of preferring [the individual defendants] with respect to their secondary liability on said promissory note and was accomplished in order to hinder, delay and defraud creditors of [the corporate defendant] including this Plaintiff."

In its prayer for relief, plaintiff asked, *inter alia*, that the defendants be required to "restore" all funds which were paid to satisfy the Peoples Bank indebtedness; that defendants be forced to account for all sums received from debtors of the corporate defendant and for the application of such funds; that a receiver be appointed for the corporate defendant; that the claims and priorities of all creditors of the defendant corporation be established; and that a money judgment be entered against the individual defendants "to the extent that they may be liable by reason of the fraudulent acts complained of."

Upon consideration of the pleadings the chancellor, in sustaining the demurrer, determined "that the facts as alleged do not show an unlawful preference."

The demurrer, of course, tests the legal sufficiency of the bill of complaint. The question presented is whether this payment of

a promissory note, upon which the controlling officers, directors and stockholders were secondarily liable as endorsers, which note evidenced a debt of the insolvent corporation incurred before insolvency, was an invalid preference which constituted a fraudulent conveyance as to the corporation's unsecured creditors.

■ Preliminarily, settled principles should be reviewed. In Virginia, not all preferential transfers are invalid. At common law and under Code § 55-80, *supra*, an insolvent debtor may generally make a valid transfer of a portion or the whole of his assets to a bona fide creditor on account of an existing indebtedness, if that is the sole purpose of the debtor and the transfer is for full value. *Surratt* v. *Eskridge*, 131 Va. 325, 335, 108 S.E. 677, 680 (1921). This is true even though such transfer may and is intended by the debtor and creditor to give such creditor a preference to the exclusion of others in the distribution of the debtor's assets. *Id.* This rule applies to corporations, *Beck* v. *Semones' Adm'r*, 145 Va. 429, 436, 134 S.E. 677, 679 (1926),[2] which are not banks or trust companies.[3] But if the purpose to make a bona fide preference is merely incidental to the transaction and is used as a cloak for some other purpose which is fraudulent in actual intent, the transfer is invalid. 131 Va. at 335, 108 S.E. at 680.

■ In order to set aside a preference, the plaintiff must not only prove that the debtor intended to delay, hinder or defraud his other creditors, he must also show that the preferred creditor had notice of such intent. *Hutcheson* v. *Savings Bank*, 129 Va. 281, 291-92, 105 S.E. 677, 681 (1921). Under the last sentence of the statute, *supra*, the transfer to an innocent grantee who has given value will be sustained. But proof of actual knowledge of the debtor-grantor's fraudulent intent is not necessary, it being sufficient to show that the grantee had "knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor. . . ." *Crowder* v. *Crowder*, 125 Va. 80, 87-88, 99 S.E. 746, 748 (1919).

[2] Other courts sharply divide on the question whether this rule should apply to business corporations. *See* 15A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7421-7422 (rev. perm. ed. 1967).

[3] Code § 6.1-78 prohibits a bank or trust company from giving a preference to any depositor or creditor by pledging assets, except under certain circumstances.

■ Against this background, we examine the arguments of the respective parties. Plaintiff relies on *Darden* v. *George G. Lee Co.*, 204 Va. 108, 129 S.E.2d 897 (1963). In that case, Darden personally advanced $22,500 to the Ricks Company during a 1958 creditors' arrangement under the federal bankruptcy act. In return for that loan, Darden took promissory notes from the company and also received 50 percent of its common stock. He was then elected a director and secretary-treasurer of the corporation. The company continued in business, but in 1960 became insolvent and Darden decided to liquidate it. At that time, there were only two creditors of the Ricks Company — Darden to the extent of the $22,500, as evidenced by the notes, and George G. Lee Co. in the amount of $20,000, for materials and supplies purchased by the Ricks Company. When it was ascertained that the assets of Ricks were insufficient to satisfy both debts, Darden took an assignment of all the company's accounts receivable. These accounts constituted the sole remaining assets of the insolvent corporation and left nothing from which the Lee Company could satisfy the sum due it.

This court held the transfer to Darden amounted to a fraudulent conveyance. We noted that the transferor's intent was to delay and hinder the creditor Lee Company from satisfying its claim and because Darden, the preferred creditor, was in complete control of the financial affairs of the debtor corporation, he was chargeable with that intent. We said:

"The weight of authority seems to be that the directors of an insolvent corporation, who are also creditors of the corporation, have no right to grant themselves a preference or an advantage over other creditors in the payment of their claims. This rule is based upon simple justice. [Citations omitted]" 204 Va. at 112, 129 S.E.2d at 900.

The plaintiff thus contends that the effect of the payment of the note in this case, in which the corporate officers were in control of the corporation, was exactly the same as if the corporation had made the payment directly to the officers. Plaintiff argues that in view of the insolvency of the defendant corporation, the individual defendants would ultimately be called upon individually to pay the note as endorsers. Therefore, the plaintiff urges, it is immaterial how the funds were transferred from the corporation to pay the note because the result is the same, *i.e.*, the defendant corporate officers have been released from their

individual obligation to pay the indebtedness of the sinking corporation, and thus have created a preference for themselves.

The defendants contend, however, that the preference was valid and primarily rely on *Planters Bank* v. *Whittle*, 78 Va. 737 (1884), in which this court sustained the right of a director to grant himself a preference if such preference was made in good faith and without fraud. In that case, Planters Bank of Farmville discounted for the Farmville Insurance and Banking Company certain negotiable notes upon which one or more of the directors of the company were accommodation endorsers, the company having agreed to indemnify the endorsers. All but one of the notes were from time to time renewed and the amount of indebtedness to the bank on account of the notes became $23,529.52. To satisfy this debt, the directors ordered that the company assign to the bank certain bonds, which were part of the company assets. This was done at a time when two suits were pending against the company for appointment of a receiver. The suit brought by another creditor of the company charged that the assignments by the company to the bank were fraudulent and void.

The trial court's decision that the transfer was illegal was reversed on appeal. Citing a number of decisions from other states, this court said:

> "It is not only settled that the directors may make preferences between creditors, but such preferences may be made in their own favor when they themselves are creditors of the corporation. Of course in such cases they must act with the utmost good faith, and the transactions to be upheld must be free from the taint of fraud or suspicion." 78 Va. at 740.

The plaintiff argues, nevertheless, that the decision here is governed by *Darden* and that this càse can be distinguished from *Planters Bank* for the same reason the latter case was held inapposite in *Darden*. In *Darden*, we said that when the transfer of the accounts receivable was made to the preferred creditor-director, he was in "complete control" of the affairs of the corporate debtor, a circumstance which did not exist in *Planters Bank. Darden* v. *George G. Lee Co., supra,* 204 Va. at 112, 113, 129 S.E.2d at 900. *See Regal Ware, Inc.* v. *Fidelity Corp.*, 550 F.2d 934 (4th Cir. 1977). Here, the plaintiff continues,

the individual defendants were in complete control of the insolvent corporation.

The defendants respond that plaintiff has failed to correctly analyze our two prior cases as they apply to the case *sub judice*. We agree.

This court has dealt with the rule followed in Virginia permitting a director who is also a creditor of the corporation he serves to make a good faith and nonfraudulent preference to himself in two different factual settings. In *Planters Bank*, the preference held valid was made by the corporation to a third-party creditor holding the note which carried the personal endorsement of the officers or directors of the corporate debtor. But in *Darden* the preference held invalid was made to the officer-director who was *himself* a creditor of the corporation and who was in *complete control* of the affairs of the corporate debtor. The facts and circumstances here are more akin to the former situation than the latter.

Embodied within the concept of fraudulent conveyances is the fact that all preferential transfers necessarily "hinder and delay" other creditors in their efforts to collect their claims. *See* Comment, *Preferences To Directors of Insolvent Corporations*, 21 Wash. & Lee L. Rev. 353, 355 (1964). But, as we have said, that fact alone is not sufficient reason under the statute to set aside an assignment as it applies to a purchaser for a valuable consideration; it is sufficient, however, "if the assignee . . . had notice of the fact that the assignment was made with 'intent to hinder.'" *Darden* v. *George G. Lee Co.*, *supra*, 204 Va. at 112, 129 S.E.2d at 899-900. So as we examine the assignee's knowledge of the intent of the debtor-assignor, it is important to note, as the defendants urge, that in the *Darden* situation the debtor-assignor and the creditor-assignee were, in effect, one person; the debtor was completely controlled by the creditor. Thus, because they were one and the same, the fraudulent intent of the debtor was ascribed to the creditor, and the preference was void. But here, as in the *Planters Bank* situation, the preference was made to a third-party creditor, the Peoples Bank of Virginia Beach, which exercised no control whatever over the insolvent corporation and which had no actual or constructive knowledge of the fraudulent intent of the assignor. Thus, one of the elements vital to the plaintiff's cause of action under Code

§ 55-80 is lacking, *i.e.*, that the preferred creditor had notice of the debtor's fraudulent intent.

This focus on the *scienter* of the preferred creditor is consistent with the reasoning employed in other jurisdictions which have sustained the validity of a preference by an insolvent corporation when a director or officer is endorser, guarantor or surety for the debt. Although the views of the courts and textwriters on this broad question have been divergent, *compare* 15A W. Fletcher, Cyclopedia of The Law of Private Corporations § 7476 (rev. perm. ed. 1967) *and* 2 G. Glenn, Fraudulent Conveyances and Preferences § 386 (rev. ed. 1940) *with* 19 Am. Jur.2d *Corporations* § 1577 (1965) *and* P. Vartanian, The Law of Corporations in Virginia § 141(3) (1929), we think, under the facts of this case, that this preference to Peoples Bank should not be declared invalid.

The case of *Rockford Wholesale Grocery Co.* v. *Standard Grocery & Meat Company*, 175 Ill. 89, 51 N.E. 642 (1898), is apposite. There, a corporation while solvent and a going concern, borrowed money from a bank, which indebtedness was guaranteed by the directors. Thereafter, the corporation became indebted to the plaintiff. By authority of the directors, a "judgment note" was then given the bank in lieu of the original note, on which judgment was at once taken and the corporate property sold. The plaintiff thereafter recovered judgment against the corporation which could not be satisfied. The plaintiff then sued the directors seeking to hold them personally liable for a breach of trust and alleging fraud in giving the judgment note.

In affirming the action of the trial court sustaining a demurrer, the Illinois Supreme Court said:

"Mere insolvency does not dissolve the corporation or ordinarily abridge the statutory or common law power of the directors. It does, however, prohibit them from giving a creditor director a preference. In such case, he, as an individual, alone received the benefit. The law will not allow him, in such case, to take advantage of his official position, as it would not be equitable to the other creditors. That equitable principle should not apply to a *bona fide* creditor where a debt is created and guaranteed by the director during solvency. Such guaranty, at least at such time, does not render such

debt fraudulent. No law has been violated, and no reason exists why such a debt should be tainted with even the suspicion of illegality. His relation as a creditor is created by his contract with the corporation, and not with the guarantors. He is just as clearly, by law, a creditor with such guaranty as without it. His rights as such creditor remain, to the end, unimpaired, during solvency and through insolvency.

* * *

"The directors [in this case] were not the creditors of the corporation and were not primarily standing in that relation to it. The creditor loaned this money to the corporation in good faith, while solvent and a going concern, and the money so obtained was used for its benefit. On no principle of law or reason can such creditor be deprived of its right to a preference merely because the directors guaranteed the debt. The act of obtaining such guaranty on the part of the creditor, or of giving it on the part of the directors, was neither illegal nor improper. It is not uncommon for the directors to be compelled to lend their personal credit, by way of surety or guaranty, in order to secure means to carry on the business. If this is done during solvency, for the benefit of the corporation, neither the right of such creditor so loaning on such guaranty, nor the power of the directors, is in any way affected or abridged as to a preference of such a debt." 175 Ill. at 92-94, 51 N.E. 642, 643.

For these reasons, we think the bill of complaint in this suit is insufficient in law to support a claim to set aside the transfer. Consequently, the decree of the trial court sustaining the demurrer and dismissing the bill will be

*Affirmed.*