## CIRCUIT COURT OF FAIRFAX COUNTY

Christopher J. Alf

    v.

Galen Capital
Corporation et al.

July 12, 2011

Case No. CL-2011-3208

By Judge Jonathan C. Thacher

This matter came before the Court on June 17, 2011, on Defendants USfalcon and Durango Group, Inc.'s Demurrer. Upon consideration of the pleadings, arguments of counsel, and the applicable governing authorities, the Court overrules Defendants' Demurrer.

*Background*

This action comes before the court on demurrer, and, as such, all factual allegations in the complaint must be taken as true. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 449 (2006). Accordingly, the following facts included in the complaint are considered true.

The Galen Capital Corp ("GCC") acquired The Durango Group in 2007, and, at this time, The Durango Group consisted of two legal entities, Durango Group, L.L.C. ("Durango, L.L.C.") and Durango Government Holdings Group, Inc. ("Durango Holdings"). In 2009, after learning that The Durango Group was having financial difficulties, Christopher J. Alf offered to lend The Durango Group $500,000. GCC, the majority owner of The Durango Group, promised Plaintiff that the loan would be used to

pay outstanding debt as well as provide The Durango Group with operating capital. Unbeknownst to Plaintiff, The Durango Group was not a separate legal entity at the time and consisted of Durango, L.L.C., and Durango Holdings, with Durango Holdings owning all the assets and controlling all operations of Durango, L.L.C. Moreover, Durango Holdings held no other significant assets beyond the assets of Durango, L.L.C. Based upon GCC's representations during negotiations, Plaintiff believed that The Durango Group, Durango, L.L.C., and Durango Holdings were all the same entity.

The negotiations between GCC and Plaintiff concluded when Plaintiff agreed to lend The Durango Group $500,000 in exchange for a promissory note from GCC. GCC instructed Plaintiff to wire the loan to a Durango, L.L.C., account, but the note identified the loan recipient as Durango Holdings. The promissory note ensured repayment by November 30, 2010, as well as a right of first refusal to purchase Durango Holdings if GCC received other offers.

Subsequently, GCC withdrew a substantial portion of the loan funds without paying any of The Durango Group's debts. Moreover, GCC then accepted a purchase offer to sell substantially all of Durango, L.L.C.'s remaining assets to USfalcon, Inc. ("USfalcon") without providing an opportunity for Plaintiff to exercise his right of first refusal. The transaction between USfalcon and GCC was completed on April 30, 2010, and Durango, L.L.C.'s assets were acquired by a newly created subsidiary of USfalcon, Durango Group, Inc. ("DGI"). This sale occurred despite the fact that, before the transaction was finalized, Plaintiff sent a letter informing USfalcon of the promissory note between Plaintiff and Durango Holdings as well as Plaintiff's contractual right of first refusal. USfalcon's purchase left Durango Holdings insolvent, which, Plaintiff claims, prevented the company from paying him the amount due in accordance with the note.

On March 11, 2011, Plaintiff filed a Complaint in this Court. The Complaint alleges six counts. In Count V, Plaintiff claims that USfalcon engaged in a fraudulent conveyance with GCC when USfalcon purchased Durango, L.L.C.'s assets. According to Plaintiff, this transaction was intended to delay, hinder, or defraud Plaintiff. In Count VI, Plaintiff alleges that DGI and USfalcon intentionally interfered with Plaintiff's contractual right to first refusal when GCC sold Durango, L.L.C.'s assets to USfalcon. To satisfy the knowledge element of both counts, Plaintiff mentions the "steep discount" in which USfalcon purchased Durango, L.L.C.'s assets, $425,000 for a company with multimillion dollar earning potential, as well as the April 22 letter, in which all parties were informed of Plaintiff's right of first refusal over any purchases of Durango Holdings. Moreover, Plaintiff's Complaint specifically alleges that USfalcon and DGI both had knowledge of Plaintiff's contractual rights.

On April 15, 2011, Defendants USfalcon and DGI filed the instant Demurer. Defendants' Demurrer raised the following issues: (1) whether

Count V of Plaintiff's Complaint alleges sufficient facts to establish that USfalcon had the requisite knowledge to establish a valid claim for fraudulent conveyance; and (2) whether Count VI of Plaintiff's Complaint alleges sufficient facts to establish that USfalcon and DGI had the requisite knowledge of the contract to state a valid claim for intentional interference. The Court opted to take Defendants' Demurrer under advisement following the June 17, 2010, hearing.

*Analysis*

*Demurrer Standard*

A demurrer tests the legal sufficiency of the factual allegations in the plaintiff's pleadings. *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005) (citing *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003)). Thus, "to survive a demurrer, [a party is] required to plead sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law." *Kitchen v. City of Newport News*, 275 Va. 378, 378-88, 657 S.E.2d 132, 137 (2008) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006) (internal quotation marks omitted)). While determining if the pleadings state a valid cause of action, the court must take all factual allegations specifically mentioned in the complaint as true, *Tronfeld*, 272 Va. at 713, 636 S.E.2d at 449, and in the light most favorable to the plaintiff. *Sanchez*, 270 Va. at 303, 618 S.E.2d at 333. Under this rule, the court admits the facts expressly alleged, implied alleged, and those which can be "fairly and justly inferred from the facts alleged." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (*quoting Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717 (1988) (internal quotation marks omitted)). However, if a trial court finds that the pleadings do not state a valid cause of action, it must sustain the demurrer. *Sanchez*, 270 Va. at 303, 618 S.E.2d at 333.

*Issue 1: Whether Count V Alleges Sufficient Facts To Establish That USfalcon Had the Requisite Knowledge To Establish a Valid Claim for Fraudulent Conveyance?*

According to USfalcon, Count V: Fraudulent Conveyance fails to state a claim for two reasons. First, USfalcon asserts that Plaintiff did not allege fraud with the requisite particularity. Secondly, USfalcon contends that Plaintiff's allegations are insufficient to establish that USfalcon had the requisite notice of any fraudulent intent.

To establish fraudulent conveyance, a plaintiff must plead that the defendant made a "gift, conveyance, assignment, or transfer of . . . any

estate, real or personal . . . with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to." Va. Code Ann. § 55-80 (2011). According to the Virginia Supreme Court, counts of fraud must meet a particularized pleading standard. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (*quoting Ciarochi v. Ciarochi*, 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952) ("[T]he bill must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defense accordingly, and since it must be clearly proved it must be distinctly stated.")). In order to avoid conclusory, vague, or indefinite allegations, pleadings must identify specificities of the fraud, which can include "the identities of the agents, officers, and employees or the details of the time and place where the fraudulent acts occurred." *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).

Contrary to USfalcon's first argument, Plaintiff has met this particularized pleading standard. Plaintiff has explicitly identified the agents of fraud by listing the companies (USfalcon and DGI) that allegedly engaged in the fraud. Moreover, Plaintiff has also alleged the general time when the fraudulent act occurred. Plaintiff's complaint specifically claims that the fraudulent transaction occurred on April 30, 2010, when GCC transferred Durango, L.L.C.'s assets to a wholly owned subsidiary of USfalcon.

USfalcon's second argument also lacks merit. To establish knowledge of fraudulent intent, a plaintiff must show that the defendant had "notice of such intent." *Bank of Commerce v. Rosemary & Thyme, Inc.*, 218 Va. 781, 785, 239 S.E.2d 909, 912 (1978). It is not necessary that a plaintiff have proof of actual knowledge; it is sufficient for the plaintiff to show evidence proving that the preferred creditor, purchaser, or other person had "knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and . . . necessarily [would] have led to the discovery of the fraud of the grantor." *Id.* (quoting *Crowder v. Crowder*, 125 Va. 80, 87-88, 99 S.E. 746, 748 (1919) (internal quotation marks omitted)). Moreover, courts have found that evidence of knowledge can be direct or circumstantial. *See Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 289-91, 105 S.E. 677, 680-81 (1921).

Applying this rule to the case at bar, the April 22 letter should have "excited the suspicion" of USfalcon. Assuming all allegations as true, it was very likely, if not certain, that USfalcon was aware of the corporate structure between Durango Holdings and Durango, L.L.C. Since USfalcon likely knew that Durango Holdings controlled and owned all of Durango, L.L.C.'s assets and Durango Holdings owned no other significant assets, USfalcon knew, or should have known, it was in fact purchasing Durango Holdings. Thus, a "man of ordinary care and prudence" would have concluded that purchasing all the assets of Durango, L.L.C., would infringe

on Plaintiff's contractual right to first refusal for Durango Holdings. This conclusion is buttressed by the fact that the Virginia Supreme Court has routinely interpreted the right of first refusal in favor of the right's holder. *See Landa v. Century 21 Simmons & Co.*, 237 Va. 374, 380, 377 S.E.2d 416, 419 (1989) ("[A] right of first refusal is inserted in a contract for the benefit of the person who is given the right and that it must, therefore, be interpreted with that purpose in mind." (citing *Cities Serv. Oil Co. v. Estes*, 208 Va. 44, 49, 155 S.E.2d 59, 63 (1967))).

More support for this conclusion can be gathered from the fact that Virginia courts have previously held that, under Virginia Code § 55-80, a court can presume fraud in situations where "badges of fraud" exist towards the transaction. *In re Decker*, 295 F. Supp. 501, 507 (W.D. Va. 1969). Indeed, a single "badge" can establish fraud or fraudulent intent in a transaction. *See In re Stuckey*, 126 B.R. 697, 702 (E.D. Va. 1990); *Hickman's Ex'rs v. Trout*, 83 Va. 478, 478, 3 S.E. 131, 136 (1887). In *Hutcheson v. Savings Bank of Richmond*, the Virginia Supreme Court specifically identified "gross inadequacy of price" as a badge of fraud and determined that the presence of this badge of fraud makes a *prima facie* case. 129 Va. at 281, 105 S.E. at 681.

In the case at bar, Plaintiff appears to claim a "gross inadequacy of price." Plaintiff's complaint alleges that USfalcon paid a "steep discount" for Durango, L.L.C. Taking these facts as true and in the light most favorable to Plaintiff, USfalcon should have known that its purchase offer was accepted with a "gross inadequacy of price." The presence of this "gross inadequacy" provides further support that Plaintiff has alleged sufficient facts to establish that USfalcon had notice of the fraudulent intent. Moreover, this presumption further evidences that Plaintiff pleaded fraud with sufficient particularity. Accordingly, the Court finds that USfalcon's second argument fails.

Thus, since USfalcon's arguments have failed to establish that the Complaint does not allege sufficient facts to state a valid cause of action for fraudulent conveyance, the Court overrules the Demurrer to Count V.

*Issue 2: Whether Count VI Alleges Sufficient Facts To Establish That Defendants USfalcon and DGI Had the Requisite Knowledge of the Contract To State a Valid Claim for Intentional Interference?*

An individual who intentionally interferes with another's contractual rights is subject to tort liability. *Duggin v. Adams*, 234 Va. 221, 225-26, 360 S.E.2d 832, 835 (1987); *see also Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). To establish a valid claim for tortious interference with contract, a plaintiff must allege: (1) a valid contractual relationship existed; (2) the defendant knew about the contract; (3) the defendant's intentional interference caused a breach or termination of the contract; and

(4) damage resulted. *Duggin*, 234 Va. at 226, 360 S.E.2d at 835; *Chaves*, 230 Va. at 120, 335 S.E.2d at 102. While malice is not a requisite element, the plaintiff must prove the defendant's "knowledge of the business relationship." *Chaves*, 230 Va. at 120-21, 335 S.E.2d at 102.

Defendants included three arguments as to why Plaintiff failed to allege facts to support a claim for intentional interference. First, Defendant DGI points out that DGI did not have notice of the contract between the GCC and Plaintiff since it was not a party to the note. Secondly, Defendants USfalcon and DGI both argue that Plaintiff failed to provide either Defendant with the requisite knowledge of the contract between Plaintiff and The Durango Group. Defendants support this contention by alleging that the April 22 letter only notified USfalcon of Plaintiff's relationship with Durango Holding, not Durango, L.L.C. Finally, Defendants argue that they did not receive the April 22 letter until eight days before the final sale took place. Based on these facts, Defendants contend that neither was aware of the contracts existence and thus neither could possess the requisite intent. As will be discussed below, none of these arguments stands up to scrutiny.

First, DGI's contention that it lacked knowledge of the contract because it was not a party fails immediately. Virginia courts have determined that a defendant can possess knowledge of a contract even though not a party to the agreement. *See Century-21 v. Elder*, 239 Va. 637, 641, 391 S.E.2d 296, 299 (1990). Thus, DGI could possess knowledge of the contract between Plaintiff and GCC without being a party. Moreover, Plaintiff has specifically alleged that DGI had knowledge of the contractual relationship.

Secondly, Defendants' argument that neither party had knowledge of the contract since the April 22 letter only identified an agreement between Plaintiff and Durango Holdings does not stand up to scrutiny. Plaintiff clearly alleges in Count VI that USfalcon and DGI had knowledge that Plaintiff's contract would be breached by completing the sale with GCC. Moreover, Plaintiff expressly alleges that DGI and USfalcon proceeded with the sale despite such knowledge. Based on these pleadings alone, which the Court must take as true, it is clear that both Defendants had the requisite knowledge of Plaintiff's contractual right of first refusal.

Moreover, further analysis provides additional support for this conclusion. Information was readily available for Defendants to determine that the assets of Durango, L.L.C., were the assets of Durango Holdings. Both USfalcon and DGI almost certainly researched the purchase offer and discovered the corporate structure between the two Durango entities. This leads the Court to determine that both DGI and USfalcon had knowledge of the contract and thus possessed the requisite intent. In fact, an opposite conclusion would encourage companies to omit researching their corporate purchases in order to avoid potential intentional interference liability; a behavior this Court does not want to incentivize.

Finally, Defendants' argument that both companies could not have formulated the requisite intent since negotiations were well underway when they received the letter informing them of Plaintiff's contractual obligations is also insufficient. Plaintiff has correctly identified the applicable rule to decide this argument in *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 670 S.E.2d 704 (2009). In *DurretteBradshaw*, the court specifically adopted language from the Restatement (Second) of Torts stating that the primary purpose for defendant's interference did not have to be the disruption of the contract. *Id.* at 145-46, 670 S.E.2d at 706-07. Intent to interfere could attach to the actor in circumstances where the actor "knows that the interference is certain or substantially certain to occur as a result of his action," as well as situations where the inference was "incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." *Id.* Applying this language to the present case, it was "substantially certain" that selling all of the assets of Durango, L.L.C., could infringe on Plaintiff's contractual right to first refusal since Defendants' knew about the corporate structure of Durango, L.L.C., and Durango Holdings. Thus, despite Defendants' argument to the contrary, it is irrelevant if both Defendants did not have the intent to interfere with the contract when the negotiations began because the facts alleged clearly establish they possessed the requisite intent when the sale concluded. Moreover, pursuant to the quoted language, Defendants could still possess the requisite intent if interference was a necessary consequence of their actions.

For these reasons, the Court concludes that Defendants have failed to advance a valid argument that Count VI does not state a cause of action. Accordingly, the Court overrules Defendants' Demurrer to Count VI.

## Conclusion

For the reasons set forth above, Defendants' Demurrer is overruled.