**In re Elizabeth Anne STUCKEY, Debtor.**

**Bankruptcy No. 88–01374–AT.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Oct. 1, 1990.

Stephen J. Annino, Kasimer & Ittig, P.C., Falls Church, Va., for creditor.

Robert G. Mayer, Trustee, Fairfax, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This opinion concerns the objection of the trustee in bankruptcy to a proof of claim filed in the case by Construction Consultants International Corporation ("CCIC").

Elizabeth A. Stuckey filed a Chapter 11 petition on July 12, 1988. Her case was converted to a chapter 7 on March 29, 1989, and Robert G. Mayer was appointed as her chapter 7 trustee in bankruptcy.

CCIC's claim was filed on January 30, 1989, and asserts an equitable lien in real property located at 415 N. Irving Street, Arlington, Virginia ("the property"). In support of its claim in the property, CCIC contends the debtor obtained title to the property as part of a fraudulent or volun-tary conveyance from her father James E. Stuckey ("Stuckey").

The trustee objected to CCIC's claim on the ground that 11 U.S.C. § 544 gives him and the bankruptcy estate an interest in the property or its proceeds superior to the claim of CCIC. Hearing on the objection was held July 12, 1990.

It is the court's ruling that the trustee's objection to the claim is sustained and CCIC's claim disallowed.

### Facts

The property was originally owned by Stuckey, who conveyed it to the debtor by deed dated July 12, 1986, and recorded in the Arlington County Circuit Court land records on August 13, 1986. At the time of the conveyance, Stuckey was indebted to Maryland National Bank pursuant to a personal guaranty given by him on behalf of Pan American Financial Corporation. The underlying debt was based upon Pan American Financial's promissory note dated April 4, 1984, in the principal amount of $2,600,000.00.

Stuckey was the president and the majority stockholder of Pan American Financial, which shared office space with an affiliated company called Pan American Leasing Corporation. During the period from April until July 1987, the debtor was employed by Pan American Leasing as a marketing representative. Both Pan American companies closed their offices in July 1987.

In 1986, after Pan American Financial defaulted on the Maryland National Bank note, the bank sued Stuckey under his guaranty in the Circuit Court of Arlington County, and obtained judgment against him in the amount of $2,369,275.00 on December 2, 1986.

On June 16, 1986, McDevitt and Street Company filed suit against Stuckey and others in the United States District Court for the Eastern District of Virginia; judgment was entered against Stuckey in this action in the amount of $800,000.00 on February 20, 1987.

Following the conveyance of the subject property to the debtor by the deed of July

12, 1986, Stuckey continued to reside in the property for at least a year and continued to pay the existing mortgage loans on the property. In September 1986 the property was conveyed by deed of trust to secure a loan from First Commercial Bank to Stuckey in the principal amount of $35,000.00. Debtor, as record title holder of the property, executed the deed of trust recorded in the land records of Arlington County Circuit Court. In January 1988 Stuckey traveled out of the country, leaving the bulk of his personal possessions at the property. On occasion he returned and stayed at the property.

During the period October 1986 through February 1, 1987, Stuckey became indebted to Construction Consultants International Corp. (CCIC). On January 15, 1988, judgment was rendered by the Circuit Court of Fairfax County in favor of CCIC against Stuckey in the sum of $13,874.44, plus interest and attorney fees. The judgment was docketed in Fairfax County on January 29, 1988, and execution issued on March 4, 1988. The judgment was also docketed in Arlington County on May 19, 1990.

On September 1, 1988, John G. Broumas, a creditor of Stuckey recorded a memorandum of lis pendens in the land records of Arlington County Circuit Court against the subject property. This lis pendens gave notice of Broumas' pending lawsuit to set aside the conveyance from Stuckey to the debtor as fraudulent and void the deed from Stuckey to the debtor. Broumas filed a second lis pendens on February 21, 1989, which was identical to the first except that it specified Broumas also claimed an interest in the property by virtue of an assignment of Maryland National Bank's judgment against Stuckey.

On January 30, 1989, CCIC filed a proof of claim in the debtor's bankruptcy case which reflected an indebtedness in the amount of $21,139.27 and claiming an equitable lien in the subject property by reason of a fraudulent or voluntary conveyance, i.e., by the deed under which debtor took title.

On May 10, 1990, the trustee filed an objection to CCIC's proof of claim.[1]

### Position of Parties

The thrust of the trustee's objection to CCIC's claim is that the trustee stands in the shoes of a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3) and may thereby avoid any claim to an equitable interest in the property.

CCIC defends its proof of claim on the ground that the conveyance to the debtor from James Stuckey was a fraudulent conveyance and that, therefore, the debtor held the property for the benefit of Stuckey's creditors, including CCIC. Further, CCIC argues, by virtue of the debtor's status as trustee of the property for the benefit of Mr. Stuckey's creditors, the equitable interest in the property never became property of the estate, pursuant to 11 U.S.C. § 541(d).

CCIC counters the trustee's position on three grounds: (1) The trustee cannot be considered a bona fide purchaser since prior to his appointment memoranda of lis pendens were filed which gave notice to all who dealt with the property that a creditor was seeking to have the transfer avoided as fraudulent. (2) The purpose of § 544(a)(3) is to allow the trustee to pursue property conveyed by the debtor to a third party and not for the trustee to enjoy the benefit of property fraudulently conveyed to the debtor. (3) The debtor, as a party to fraud under Virginia law, should be personally liable to the grantor Stuckey's credi-

---

1. Broumas also filed a claim in this case based upon the circumstances of Stuckey's conveyance to the debtor. In July 1989 the trustee gave notice of proposed compromise of the Broumas claim pursuant to Rule 2002(a) of the Rules of Bankruptcy Procedure. No objection was made to the proposal, which was approved by the court at a hearing. For reasons that do not appear in the record CCIC did not receive notice of the Broumas compromise.

Under the trustee's compromise, the trustee was to sell the subject realty and pay Broumas the total sum of $45,000.00. After the compromise was approved the trustee sold the property, and the court authorized final payment to Broumas by order entered on or about September 28, 1990.

tors to the extent that the security of the property is diminished; because there were obvious indicia of fraud, the debtor knew or should have known of her father's intent.

### Discussion And Conclusions

In this contested matter, the debtor's trustee in bankruptcy relies upon the "strong arm" powers given trustees under 11 U.S.C. § 544(a) to defeat CCIC's claim. Specifically his position rests upon the following language of § 544(a):

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of

. . . . . .

(3) a bona fide purchaser of real property, ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

. . . . .

11 U.S.C. § 544(a)(3).

CCIC's argument that the trustee could not be considered a bona fide purchaser because Broumas' recorded memoranda of lis pendens preceded the trustee's appointment may be dispensed with summarily. As noted above, this case was originally filed as a chapter 11 on July 12, 1988; the first lis pendens was filed on September 1, 1988; the case was converted to a chapter 7 on March 29, 1989, after which Mayer was appointed trustee.

It makes no difference that the trustee was not appointed until after conversion of the case. Section 544(a) establishes the trustee's powers under this section as of "the time of the commencement of the case," not as of the date of appointment. 11 U.S.C. § 544(a). Section 348(a) states that the commencement date of the case is not affected or changed by the conversion of the case from one chapter to another. As a result, the trustee was in the position of a bona fide purchaser as of July 12,

1988, before the filing of the first memorandum of lis pendens. *See First National Bank of Poplar Bluff v. R & J Construction Co. (In re R & J Construction Co.)*, 43 B.R. 29, 31 (Bankr.E.D.Mo.1984).

CCIC's second argument is that the trustee may not use § 544(a)(3) to retain for the benefit of the estate property that was obtained by the debtor through improper means. In support of its proposition CCIC cites *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009 (5th Cir.1985), and *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982). In *Vineyard* the United States Court of Appeals for the Fifth Circuit adopted the position that the trustee's strong arm powers are limited by § 541(d), which excludes from property of the estate beneficial interests held by third parties in property titled to the debtor. As a result, the court concluded that where state law imposed a constructive trust in favor of a third party in property held by the debtor, the constructive trust beneficiary could recover the property in bankruptcy court through appropriate proceedings.

In *McCannon*, the Court of Appeals for the Third Circuit carried the analysis another step. The debtor had entered into a contract to sell a condominium to the plaintiff, who then failed to record the contract or reach settlement on the property before the debtor filed its petition in bankruptcy. In a subsequent proceeding filed by the plaintiff for specific enforcement of the contract of sale, the bankruptcy court and district court both held that section 544(a)(3) empowered the trustee to avoid the plaintiff's interest in the property as it was not properly recorded pursuant to Pennsylvania statute. The Third Circuit reversed on the ground that while the contract was not duly recorded, constructive notice, recognized by Pennsylvania law, was provided by the plaintiff's having resided in the condominium. The trustee could not, therefore, stand in the shoes of a bona fide purchaser with respect to the condominium.

While *Vineyard*, if broadly applied, would support the argument pressed by CCIC, the *McCannon* case clearly assumes

the opposite rule to apply: if a property interest may be defeated at state law by a bona fide purchaser, then the trustee in bankruptcy may defeat such an interest. In addition, it is possible to construe *Vineyard* to stand only for the proposition that the trustee may not defeat a constructive trust *otherwise enforceable* under state law.

This court adopts the underlying analysis set forth in *McCannon* as the better reasoned rule, since it takes into account whether state law would permit a bona fide purchaser to defeat a property interest. While there may be appeal to the position that the trustee should not take what the debtor did not own, this approach is flatly contrary to the powers provided in § 544. The obvious purpose of § 544 is to put the trustee in a position to defeat unrecorded interests in the debtor's property to the extent that state law would protect a subsequent bona fide purchaser. This necessarily confers upon the trustee a greater interest in property than that enjoyed by the debtor.

While § 544 is federal law, the extent to which it may be applied depends on applicable state law. *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir.1985); *Harkins v. Wheeling National Bank (In re Morgan)*, 96 B.R. 615, 618 (Bankr.W.D.W.Va.1989). Consequently, the court looks to Va.Code Ann. § 55–80 (1986 repl. vol.) to determine whether avoidance of the transfer is available. § 55–80 provides in pertinent part:

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal ... given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from that they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Va.Code Ann. § 55–80 (1986 repl. vol.).

This court concludes from the last sentence quoted that the bankruptcy trustee, standing in the shoes of a bona fide purchaser, under § 544(a)(3) of the Bankruptcy Code, has standing to defeat a creditor's attempt to avoid a fraudulent conveyance pursuant to § 55–80 of the Virginia Code.

CCIC's final argument is that the debtor should at least be personally liable by virtue of her being a "party to the fraud," and should be personally accountable to the extent the "security of the property has been diminished." CCIC points to "badges of fraud" of which the debtor was or should have been aware: that the debtor was closely related to Stuckey, that Stuckey resided at the property, and that the debtor obtained a loan for him secured by the property. These facts are generally considered to be "badges of fraud" relevant to establishing the requisite fraudulent intent to avoid a conveyance. *See Hyman v. Porter (In re Porter)*, 37 B.R. 56, 63 (Bankr.E.D.Va.1984); *Hutcheson, v. Savings Bank of Richmond*, 129 Va. 281, 105 S.E. 677 (1921).

The court rejects CCIC's argument for personal transferee liability for two reasons. First, the Virginia Supreme Court has determined that § 55–80 does not authorize in personam judgments. *Cheatle v. Rudd's Swimming Pool Supply*, 234 Va. 207, 360 S.E.2d 828 (1987); *Mills v. Miller Harness Co.*, 229 Va. 155, 326 S.E.2d 665 (1985). *See also APAC–Virginia, Inc. v. Jenkins Landscaping & Excavating, Inc. (In re Jenkins Landscaping & Excavating, Inc.)*, 93 B.R. 84 (W.D.Va.1988). The court is aware of at least one early Virginia case, however, that imposed such liability. In *Carner v. Middlekauf*, 117 Va. 474, 85 S.E. 473 (1915) the defendant was found to have assisted her husband in two fraudulent conveyances by transferring various assets owned by her husband as consideration for a transfer of land, which she had titled in her name only. In addition to setting aside the transfers as fraudulent, the Virginia Supreme Court of Appeals affirmed a personal judgment against the transferee on the ground that she was a fraudulent grantee, having the deeds made

to her, rather than to her husband. Although it was not referred to or distinguished in either *Cheatle* or *Mills*, *Carner* appears to be overruled by those cases.

Second, there is simply not sufficient evidence that the debtor acted fraudulently in accepting the property from her father and later allowing him to encumber it. While so-called "badges of fraud" may be used to establish fraudulent intent for purposes of setting aside a conveyance, this court does not see a sufficient indication of fraudulent intent on the part of the debtor to hold her personally liable. The court notes here that the only case cited by counsel for CCIC, *Carner*, addressed the situation where the transferee obtained title to land by using her husband's assets as consideration while at the same time misrepresenting the source of the consideration. This court does not see any similar affirmative dishonest conduct on the part of the debtor in this case. As a result, the court rejects CCIC's argument that the debtor should be personally liable.

Accordingly, the trustee's objection to the claim of CCIC will be sustained and the claim disallowed. The court will enter an order reflecting this ruling.